Whitakee, Judge,
delivered the opinion of the court:
■ Plaintiff entered into a contract with the United States wherein plaintiff agreed to construct two large hangars and certain auxiliary buildings at Muroc Army Airfield, California. The Government agreed to furnish the entire amount of structural steel and certain fixtures necessary for the construction of the two hangars. The contract was awarded June 30, .1944, and provided that the contractor was to commence work one day after the award. In recognition of the difficulties of wartime construction, the contract carried no liquidated damage clause for failure to finish the work within the contract period.
On the day prior to the award of the contract, the Government placed its order for the steel it was to furnish. It does not appear that the defendant, at that time, had reason to believe that it would not be able to obtain the steel in time to supply the contractor as needed. The Government had a certain amount of used steel on hand, which it was in" a position to ship without delay, and there is no evidence that the defendant had reason to believe that steel through, conamer-eial channels would not be obtainable in time for the contracr tor’s scheduled use. This did not turn out to be the case. The used steel proved to be unusable without extensive reconditioning, and the new steel was not forthcoming until several months after the scheduled contract completion date." We have found that the Government’s delay in getting the. steel to'plaintiff delayed" plaintiff 12Ó days'.'
*221 As stated, there is no evidence that the Government knew it would be unable to get the steel in time nor that it had reason to believe that it would be unable to do so. The most that can be said is that the Government must have known that there was some uncertainty about its ability to do so, due to wartime demands and restrictions; but this situation was as well known to the plaintiff as it was to the Government. The parties were well aware that there might be delays, as evidenced by the fact that the customary liquidated damages •clause was stricken from this contract. Nor does the evidence show that the Government did not exert its best efforts to obtain the steel it was to furnish. Its failure to do so was not due to a lack of diligence on its part. Under this state of facts, we must hold that the decision of the Supreme Court in United States v. Howard P. Foley, Inc., 329 U. S. 64, is controlling, and thatplaintiff’s petition must be dismissed.
The defendant, in its counterclaim, presses three counts. The first count arises from a contract entered into April SO, 1942, between the Government and the plaintiff for the construction of certain buildings and facilities at án air base near ■Santa Maria, California. It is made up of five separate, claims. The first claim is for $778.09, which is an amount plaintiff paid and then charged to the Government for certain stands upon which hot water heating plants were installed. The Government reimbursed plaintiff, but it now ■contends that the contract required the contractor to furnish the stands and' seeks recovery of the money as having been paid under mistake. The contract itself is ambiguous, but the contracting officer allowed the item, accepting plaintiff’s interpretation. The defendant on its counterclaim bears the burden of proof, and no convincing evidence has been presented that the contracting officer’s interpretation was not correct, or that payment was made by mistake. ■ Because of-defendant’s failure of proof, this-'portion of Count I must be disallowed. . • •
' The second item under Count. I involves hot water generators. Plaintiff has conceded his liability to the extent of $23.03; defendant has relinquished' its claim for more.
■The third item involves trucking charges in the sum of :$1,857.85 paid to plaintiff by defendant. ■ At the time of the *222 execution of this contract the railhead nearest to the job was in Santa Maria, California. The plot plan of the job, however, showed a right-of-way for a spur running from Santa Maria to the site. At the time plaintiff visited the site the work was in progress on the spur, but no rails had been laid. Plaintiff asked the contracting officer when the spur would be ready. The contracting officer fixed no definite date, but said that the Government would have the spur completed as quickly as possible. The contract for the spur provided that the work would be completed by September 1, 1942. It was not actually completed until November 30, 1942. In the meantime plaintiff was required to haul lumber from the railhead at Santa Maria to the job site at a cost of $1,857.85. This was the cost of doing work for which plaintiff was responsible, and he should not have been reimbursed by the Government. This amount the Government is entitled to recover.
The defendant is also entitled under Count I to recover $47.38, representing use tax on nails allocated by the Government, and $773.44 representing cash discounts allowed to plaintiff by vendors of material and not credited to defendant.
The second count in defendant’s counterclaim arises from a contract dated November 28, 1942 between the plaintiff and defendant for the construction of hangar buildings at Yuma, Arizona. It is stipulated that plaintiff is indebted to defendant in the sum of $154.94 on account of overpay-ments made by defendant, and we hold that defendant is entitled to judgment in that amount.
Count III of defendant’s counterclaim arises from a contract between the parties entered into on June 1, 1943, for alterations of certain buildings at Trona, California. The contract required the defendant to allocate to plaintiff the lumber for the job, and it provided that the defendant should pay for the cost of transporting the lumber from the mill to the railhead nearest the job site, but that the plaintiff would have to pay for the cost of unloading the lumber and transporting it from the railhead to the construction site. Plaintiff purchased the lumber from dealers in the Los Angeles area and had them haul it by truck direct to the job. This cost plaintiff $372.50, for which he was reim *223 bursed by the defendant. If the lumber.had been shipped by rail to the nearest railhead, the cost would have been $272.50. This was the extent of defendant’s liability. It, therefore, appears that the defendant overpaid plaintiff the sum of $100.00, which amount it is entitled to recover.
The parties have agreed that plaintiff is indebted to defendant in the sum of $357.20, representing cash discounts earned by plaintiff but not credited to defendant, and a duplicate payment on a lumber invoice.
Plaintiff’s petition will be dismissed. Judgment will be entered in favor of the defendant against plaintiff for the sum of $3,313.84. It is so ordered.
Howell, Judge; Madden, Judge; Littleton, Judge; and Jones, Chief Judge, .concur.