WhitakeR, Judge,
delivered the opinion of the court:
Plaintiffs sue for damages for delay in the furnishing of reinforcement steel by the defendant under a contract entered into between the parties on April 15,1946.
On April 10, 1945, the defendant, through the Bureau of Reclamation, Department of the Interior, issued invitations for bids for construction of the Big Flat Canal. Plaintiffs were the low bidder, and on April 15, 1946, about a year later, were awarded the contract.
*271 The specifications, which were attached to the invitation for bids, provided in paragraph 11:
Availability of fwnds. — This contract is made contingent upon Congress making the appropriations, and upon the making of allotments for the Missoula Valley project from such appropriations pursuant to the Act of August 11, 1939 (53 Stat. 1418), as amended, necessary for expenditures hereunder. In case any such appropriation or any such allotment as may be necessary to carry out this contract is not made, the contractor hereby releases the Government from all liability hereunder.
Plaintiffs’ bid, the lowest received, exceeded the estimated cost of construction and the amount then allotted for the Big Flat Canal. This required a reconsideration of the allotments to various projects of the Bureau of Reclamation; but finally, on February 1, 1946, the necessary funds were allotted, and on February 4,1946, plaintiffs were notified that they had been awarded the contract. The execution of the contract followed on March 30,1946, and plaintiffs were given notice to proceed on April 15,1946.
Notwithstanding the uncertainty about the final execution of a contract, plaintiffs nevertheless decided to proceed with the work, and on May 22, 1945, they advised the defendant that they were moving their equipment onto the construction site. The defendant notified plaintiffs that it was inadvisable for them to proceed with the work oh account of the doubt about the availability of funds and also certain matters connected with the acquisition, of the necessary right-of-way. Plaintiffs nevertheless requested permission to proceed, and this permission was granted, but with the understanding that whatever work plaintiffs did would be done at their own risk.
Plaintiffs commenced operations on June 7,1945, and continued until September 13, 1945. In the meantime the defendant notified plaintiffs that further difficulties had been encountered in securing funds for the project, and again notified plaintiffs that they were proceeding at their own risk. Notwithstanding this, plaintiffs resumed operations in February 1946.
The contract was not executed by the defendant until March 30, 1946. By that time plaintiffs had been working *272 on the project for about six months, and, no contract having been awarded or notice to proceed having been given, they had received no payment for'the work done. In order to enable plaintiffs to securp payment for work done, the defendant issued a notice to proceed on April 15,1946. Work had been done which would have entitled plaintiffs to the sum of $81,561.31, if the work had been done after receipt of notice to proceed. The notice was issued in order to enable plaintiffs to collect this amount.
At the time it was issued defendant did not have on hand the -reinforcement steel for the construction of certain concrete flumes, which the contract required it to furnish. It had issued a formal invitation for bids for this steel on March 2, 1946, but had received no bids. However, defendant hoped to be able to secure the steel without much delay. Its efforts to do so, however, were unavailing. Between its first invitation for bids on March 2, 1946, and the first of October 1946, it issued five additional invitations for bids, but none was received. In addition to these invitations for bids, the local office of the Bureau of Reclamation had prepared an itemized statement of the requirements for the project, and constantly maintained a system of inquiry and report from its various projects as to the availability of these requirements, including the steel and other building materials. It also kept in contact with approximately 89 commercial .suppliers, -with the War Assets Administration, the Department of '.the Army, the Department of the -Navy, the War Relocation Authority, and the Federal Bureau of Supplies in an effort to secure the required steel.
In addition to this, it authorized the contractors to undertake to secure the necessary steel themselves and the construction engineer on the project was directed to contact all local sources of supply. The contractors finally located the necessary steel in Seattle, but at a price above the Office of Price Administration prices. Because it was above the Office of Price Administration prices, the defendant refused to enter into a contract for the purchase of it. ■
Not until October 19, 1946, was the defendant able to secure any of the required steel. On this date it delivered to the job eleven tons of steel bars, and in November it delivered *273 five additional tons, which had been diverted irom two other projects of the Bureau of Reclamation. Defendant was never able to secure the balance of the steel required. However, on June 18, 1946, it learned that it could secure welded wire mesh from the War Assets Administration at Cheyenne, Wyoming, and it determined to substitute this mesh for the steel bars. Revised drawings were prepared for use of this welded wire mesh, and on July 22, 1946, the mesh arrived in Missoula.
By May 14,1946, the plaintiffs were ready to proceed with the concrete work, but no reinforcement steel bars being on hand and it being uncertain when they would be received, plaintiffs discontinued operations and removed a part of their equipment to another job which defendant had let to them at Cody, Wyoming. Plaintiffs returned to the job on August 9,1946, a little over two weeks after the welded wire mesh had been delivered. In the meantime, plaintiffs had been undertaking to get together form carpenters, concrete workers, and other necessary labor. This, however, was ex-, tremely difficult to do, since in the meantime lumber had become very scarce and labor was difficult to secure due to the fact that the defendant had started a large housing-project at Missoula, Montana, a few miles away from the Big Flat Canal, which largely consumed the labor supply. This shortage of labor and of lumber further delayed plaintiffs so that the contract time had to be extended a total of 304% calendar days.
Had plaintiffs been able to get the necessary steel at the time they were ready to use it on May 14, 1946, they would have been able to secure the necessary lumber and the necessary labor in time to have completed the work within the 180 calendar days allotted for the performance of the contract work, and the delay of 304% days was due to the defendant’s inability to secure the necessary steel on time, which threw the performance of the contract into a period of a. short supply of lumber and of labor. It is for damages for this period of delay that plaintiffs sue. All of the delay they attribute to the failure to furnish the steel on time.
We are of the opinion that plaintiffs are not entitled to recover. Defendant exerted every effort to secure the necessary steel. It was more than ordinarily diligent in under *274 taking to do so. Its inability to do so was not attributable to any fault on its part. It is true it gave plaintiffs notice-to proceed at a time when it did not have on hand the necessary steel, but, as we have stated above, this notice was given for plaintiffs’ benefit, in order to enable them to secure payment for work already done, and at the time it was given plaintiffs knew that the steel was not on hand and knew that' defendant had received no bids to furnish it in response to-its invitation for bids on March 2, 1946. It was not plaintiffs’ fault that the work was delayed, but we do not think it was defendant’s fault either, since it did everything it could; do under the circumstances to secure the necessary steel. It was unable to secure it because manufacturers had ceased' making it and had diverted their steel producing capacity to-the manufacture of large structural shapes and plates. All sources of supply were assiduously canvassed, but defendant never was able to find the necessary steel, and finally had to-substitute welded wire mesh therefor. This it did, as soon» as this wire mesh was found.
Under the authority of United States v. Howard P. Foley Co., Inc., 329 U. S. 64, we hold that plaintiffs are not entitled to recover. Their petition will be dismissed.
Howell, Judge; Madden, Judge; Littleton, Judge; and" Jones, Chief Judge, concur.