InTTKETON, Judge,
delivered the opinion of the court:
Plaintiff sues to recover damages in the amount of $90,-415.48 for the alleged breach of a contract entered into on January 28,1946, with defendant, acting through its Bureau of Reclamation, Department of the Interior, whereby plaintiff agreed to perform earthwork and erect reinforced concrete structures for a pilot canal, laterals and sublaterals, which were to be a part of defendant’s Pilot Division, River-ton Project, Wyoming.
*36 Under paragraph 23 of the contract specifications quoted in finding 6, defendant agreed to furnish cement, reinforcing steel, and certain other materials for use in the contract work. Because of the inability of defendant to supply reinforcing steel and cement when needed by plaintiff for contract operations, there was substantial delay in the completion of the work.
It is plaintiff’s position that the failure of defendant to furnish the materials as needed was a breach of contract or of warranty, or both, for which plaintiff is entitled to recover damages. Defendant contends that it did not breach the contract for the reason that it did not, either in the contract or by warranty, agree to furnish the materials at any particular time, and that it was not negligent in delivery of materials to plaintiff.
The case is now before the court under an order dated November 2,1951, limiting the trial to the issues of law and fact relating to the right of plaintiff to recover, and re-' serving for later determination the amount of recovery should plaintiff here prevail.
On January 28,1946, the parties executed a contract whereby plaintiff agreed to perform earthwork and erect reinforced concrete structures for defendant at the Riverton Project in Wyoming. The contract specifications contained a provision that defendant would furnish certain materials, including cement and reinforcing steel, for use in the completion of the contract work. Plaintiff was to begin work within 30 calendar days after receipt of notice to proceed, and to finish the job within 270 calendar days after receipt of the notice. On March 4, 1946, plaintiff received notice to proceed, thus fixing the contract performance period to be March 5 to November 29, 1946, inclusive.
On March 4, 1946, defendant issued a requisition for purchase of the project steel requirements, and ón March 18, 1946, the first invitation for bids on such steel was issued. Bids were to be opened on April 4, 1946, but none were received. Invitations for bids were thereafter reissued six times during the spring and summer of 1946, to an aggregate of 48 suppliers, but no bids were received in response to these invitations.
*37 On April 4,1946, plaintiff submitted to the project superintendent a schedule of his steel and cement requirements, requesting periodic deliveries beginning April 20. On April 22,1946, plaintiff was advised by defendant’s superintendent that there would be some delay in the delivery of steel. Thereafter, as set forth in findings 13-18, defendant made repeated and diligent efforts to obtain reinforcement steel for the project which finally resulted, in August of 1946, in the delivery of sufficient amounts of steel for the completion of the work.[1]
In addition to the difficulties above recounted, defendant was unable to furnish cement as needed by the contractor, which also caused delay. Orders for the cement were placed by plaintiff with the project superintendent, who promptly, and sufficiently far in advance to have permitted timely delivery, relayed the orders to the cement manufacturer. On two occasions prompt delivery was not forthcoming, and, as a result, plaintiff was forced to suspend concrete placing operations[2] because of a lack of cement.
Plaintiff applied for and was granted an extension of time because of the inability and failure of defendant to furnish cement and steel as needed. The contracting officer made findings of fact dated June 4, 1947, in which he found that plaintiff had been delayed 91 calendar days because of the inability of defendant to furnish reinforcing steel as needed, and 12 calendar days by the inability of defendant to furnish cement as needed. The contracting officer further found that plaintiff was entitled to an extension of 174 calendar days from November 2,1946, to April 24,1947, because of an order to suspend concrete placing operations during the winter months. As a result of these findins plaintiff was given and accepted an extension of time of 277 calendar days.
By Change Order No. 2, Extra Work Order No. 2, and findings of fact of the contracting officer dated December 3, *38 1947, the performance time of the contract was. extended to October 2,1947, on which date plaintiff completed the job.
Plaintiff contends that he was wilfully and negligently delayed in the performance of the contract work by defend;ant’s failure to furnish reinforcing steel and cement when needed. It is argued that defendant gave notice to proceed at a time when it did not have reinforcing steel on hand or on order, that at the time notice to proceed was given defendant knew or should have known that there might be delays in obtaining steel, and that defendant was thereafter. dilatory in providing a sufficient supply of steel for the completion of the project.
While it is true that at the time the contract was executed defendant had not obtained or ordered the steel for the instant contract, it had been the practice of the Bureau of Beclamation'for a number of years to obtain steel only when there was a contractor on the job to receive it, and prior to 1946 it had usually been possible to secure delivery of reinforcing steel within thirty days from the date of the order.
It is also true that in December of 1945 and January of 1946 defendant had encountered some difficulty in obtaining reinforcing steel for use in other projects. At the time the instant contract, was entered into, however, defendant reasonably expected that the supply of steel would improve in the immediate future. There is nothing in the record to indicate that defendant knew or should have known that it would be unable to furnish reinforcing steel to the contractor in time for the work to proceed in an orderly manner and to be completed within the contract period. Nor can we, in the circumstances of this case, attach significance to the fact that notice to proceed was given at a time when the Government did not have on hand or on order the materials it had agreed to furnish.
Finally, there is no evidence that the defendant was in any way at fault in failing to exert its best efforts to obtain the steel it had agreed to furnish. On the contrary, we have found that it exercised great diligence in an effort to secure steel for the plaintiff as needed, and that its inability to do so was not attributable to any fault or negligence on its part. It was very difficult to obtain steel in 1946, and the record *39 shows that' defendant did all that it could to prevent costly delays to plaintiff in this regard.
With regard to the delay occasioned by a lack of cement,our findings show even more clearly that no blame can attach to defendant. Orders were relayed to the cement manufacturer sufficiently far in advance to have permitted timely delivery, and defendant can not be held liable here because the manufacturer failed to make prompt delivery.
. It is clear,.under these facts and circumstances, that defendant has in no wise breached its contractual obligations. United States v. Foley Co., 329 U. S. 64; Daum v. United States, 120 C. Cls. 192; Otis Williams & Co. v. United States, 120 C. Cls. 249.
Plaintiff also contends that defendant warranted that it would furnish steel and cement as needed. Defendant asserts-that the evidence does not establish any such warranty.
Stated briefly, the facts on which plaintiff relies are that-prior to the submission of his bid plaintiff had two conver--sations with the representative of defendant receiving the’ bids, in which plaintiff inquired whether the Government-would have the steel and cement on request, and stated that-ho could not submit a bid unless he was sure that the steel-wouifl be supplied on request.
The defendant’s representative, who was not the contracting officer, replied that the Government supplied the materials it agreed to, and that it was very unusual to question-the ability of the Government to supply materials. Plaintiff assumed that these statements were an assurance that the materials would be supplied as. needed, and relying on-this assumption completed and submitted his bid.
Plaintiff then understood that the defendant’s representative receiving the bids was to be the project superintendent on the job, and that he would be under the direction of superior officers in the Bureau of Reclamation. He also knew that the central offices of the Bureau for the western area were in Denver, Colorado, but he made no inquiry there concerning the availability of steel or cement.
We are not convinced that the statements relied on by plaintiff can properly be interpreted as establishing a warranty that defendant would furnish steel and cement as *40 needed. Assuming, however, that the defendant’s representative receiving the bids did make such a warranty, it would be ineffectual because made without authority. Kelly v. United States, 116 C. Cls. 811, certiorari denied 340 U. S. 850.
We hold, therefore, that plaintiff is not entitled to recover, and the petition will be dismissed.
It is so ordered.
Howell, Judge; MaddeN, Judge; Whitakee, Judge; and JoNes, Chief Judge, concur.
EINDINGS OE EACT
The court makes findings of fact, based upon the evidence, the report of Commissioner Roald A. Hogenson, and the briefs and argument of counsel, as follows:
1. By order of the court dated November 2,1951, pursuant to Rule 38 (b), proceedings in this case were limited to a determination of the issue of liability of the United States to the plaintiff.
2. Plaintiff, W. E. Barling, is a United States citizen residing at Meeteetse, Wyoming.
3. On January 28, 1946, the plaintiff and the defendant, acting through its Bureau of Reclamation, Department of the Interior, entered into Contract No. 12r-15701, whereby the plaintiff agreed, in consideration of his bid price of $188,604.60, to perform certain earthwork and erect certain reinforced concrete structures for a pilot canal, laterals and sublaterals, which were a part of the defendant’s Pilot Division, Riverton Project, Wyoming.
4. The contract provided that the work should be begun within 30 calendar days after receipt by the plaintiff of notice to proceed, and be completed within 270 calendar days from the date of receipt of such notice.
On March 4, 1946, plaintiff received notice to proceed, thus establishing the contract performance period to be March 5 to November 29,1946, inclusive.
5. The contract provided in part as follows:
Aeticle 3. Changes. — The contracting officer may at any time, by a written order, and without notice to the *41 sureties, make changes in the drawings and/or specifications of this contract and within the general scope thereof. If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. No change involving an estimated increase or decrease of more than Five Hundred Dollars shall be ordered unless approved in writing by the head of the department or his duly authorized representative. Any claim for adjustment under this article must be asserted within 10 days from the date the change is ordered: Provided, however, That the contracting officer, if he determines that the facts justify such action, may receive and consider, and with the approval of the head of the department or his duly authorized representative, adjust any such claim asserted at any time prior to the date of final settlement of the contract. If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in article 15 hereof. But nothing provided in this article shall excuse the contractor from proceeding with the prosecution of the work so changed.
Aeticue 9. Delays — Damages.—If the contractor refused or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contractor’s right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event it will be impossible to determine the actual damages for the delay and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers *42 and the contractor and his sureties shall be liable for the amount thereof: ProvidedThat the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public, enemy, acts of the Government, acts of another contractor in the Serformance of a contract with the Government, fires, oods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, if the contractor shall within 10 days from the beginning of any such delay (unless the contracting officer, with the approval of the head of the department or his duly authorized representative, shall grant a further period of time prior to the date of final settlement of the contract) notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the •department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto.
ARTICLE 15. Disputes. — Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to- written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed.
6. The specifications of the contract provided in part as follows:
2. Climatic conditions. The contracting officer may order the contractor to suspend any work that may be subject to damage by climatic conditions.
13. Protests. If the contractor considers any work demanded of him to be outside the requirements of the contract, or considers any record or ruling of the con *43 tracting officer or of the inspectors to be unfair, be shall immediately upon such work being demanded or such record or ruling being made, ask, in writing, for written instructions or decision, whereupon he shall proceed without delay to perform the work or to conform to the record or ruling, and, within ten (10) days after date of receipt of the written instructions or decision, he shall file a written protest with the contracting ■officer, stating clearly and in detail the basis of his objection. Except for such protests or objections as are made of record in the manner herein specified and within the time limit stated, the records, rulings, instructions, or decisions of the contracting officer shall be final and conclusive. Instructions - and/or decisions of the contracting officer contained in letters transmitting drawings to the contractor shall be considered as written instructions or decisions subject -to protest or objections as herein provided.
22. Liquidated damage's. The contractor shall pay to the Government, as fixed, agreed, and liquidated damages, the sum of seventy-five dollars ($75) per day. for -each calendar day’s delay. •
23. Materials furnished by the Government. The Government will furnish cement for use in concrete, mortar, and grout; admixtures, if required, for use in concrete, mortar, and grout; reinforcement bars; precast lock-joint concrete pipe -for-siphons, turnouts, and culverts; lumber for permanent installation in structures, but not lumber for forms or for other temporary construction; turnout gates; structural steel for handrails; metalwork for flashboard and stop-plank guides; pipe for weep pipes; paper sleeves for covering rein-, forcement bars in contraction joints; metal weir crests; ladder rungs; anchor bolts; bolts, washers, screws, and spikes and nails twentypenny or larger in size to be used in the completed structures; paint materials; and also all other materials not specifically mentioned in this paragraph or in paragraph 24 that will become a part of the completed construction work. Precast lock-joint concrete pipe will be delivered at the pipe-manufacturing plant at Pavillion, Wyoming. All other materials furnished by the Government will be delivered to the contractor f. o. b. cars at the railroad station most convenient to the work, as determined by the contracting officer. The contractor, shall haul all of the materials from the points of delivery to the work; shall provide suitable warehouses or other means of protection satisfactory to the contracting officer for such of the materials *44 as, in the opinion of the contracting officer, require storage or protection; and will be charged for any materials lost or damaged after delivery, except as otherwise specifically provided, the same amounts that the materials cost the Government at the point of delivery to the contractor. The contractor shall report to the contracting officer, in writing, within 24 hours after unloading, any shortage in or damage to materials when delivered. The contractor shall be responsible for the prompt unloading of materials delivered on cars and for proper care of the materials, and will be held liable for any demurrage charges incurred due to failure to unload cars promptly. The cost of unloading, hauling, storing, and caring for all of the materials furnished by the Government shall be included in the unit prices bid for the work in which the materials are to be used. The cost of handling and installing minor miscellaneous items of metal, timber, and other work for which specific unit prices are not provided in the schedule, shall be included in the unit prices bid for the work to which they are appurtenant. The contractor shall return to the Government at the railway station most convenient to the work or at points convenient to the work, as directed by the contracting officer, all unused materials, and will be charged for any materials not used and not returned the same amounts that the materials cost the Government at the point of delivery to the contractor.
7. Plaintiff was substantially delayed in the completion of the contract work by the defendant’s failure to provide reinforcing steel and cement when needed by the plaintiff for contract operations. Plaintiff was damaged as a result of these delays. No findings are made on the issue of damages, this issue being left for determination in the event the issue of liability[3] is decided in favor of plaintiff and against the United States.
Plaintiff gave due written notice of delay caused by the failure of defendant to furnish reinforcement steel when needed and the contracting officer had actual knowledge of delay caused by the inability of the defendant to furnish cement when needed.
8. On January 2, 1946, the plaintiff went to the Riverton, Wyoming, office of the Bureau of Reclamation to submit his *45 bid. He was then concerned about the availability of reinforcing steel. While completing the preparation of his bid, he inquired of the defendant’s representative receiving the bids whether the Government would have the steel and cement upon request. The defendant’s representative replied that the Government supplied the materials it agreed to, and that it was very unusual to question the ability of the Government to supply materials. The plaintiff inquired of the defendant’s representative a second time and stated that he could not submit a bid unless he was sure that the steel would be supplied upon request. The defendant’s representative replied that the plaintiff was questioning the integrity of the Government and that his previous statements stood.
The plaintiff then understood that the defendant’s representative was to be the project superintendent on the job, and that he would be under the direction of superior officers in the Bureau of Reclamation. The plaintiff knew that the central office of the Bureau for the western area was located at Denver, Colorado, but made no inquiry there regarding availability of steel. The plaintiff was concerned about the availability of steel as early as December 26, 1945, when another employee of the defendant conducted him over the project site.
The plaintiff assumed that the statements made by the defendant’s representative were an assurance that the defendant would provide the reinforcing steel and cement as needed, and in reliance thereon completed and submitted his bid.
9. Prior to 1946, the defendant’s Bureau of Reclamation had been able generally to obtain delivery of reinforcing steel within thirty days after placing orders. The defendant had not obtained nor ordered the steel for the subject contract when bids were received on January 2,1946. The Bureau’s practice for a number of years had been to obtain steel when there was a contractor on the job to receive it. In December 1945, the defendant had issued invitations for bids on reinforcing steel for other projects, and on some invitations received no bids.
Between January 2, 1946, the date plaintiff submitted his bid, and January 28, 1946, the date the contract was exe *46 cuted by the plaintiff, tbe Bureau advertised several times for reinforcing steel for other projects, but no bids were submitted.
At the time the contract' was entered into the Bureau expected the supply of steel to improve because some prospective suppliers reported that they hoped to be in a better position soon regarding' delivery of steel and asked to be notified of future invitations for bids.
10. Approximately 235,700 pounds- of reinforcing steel were necessary for the erection of the concrete structures required under the specifications. This consisted of approximately 162,000 pounds of %-inch bars, 72,000 pounds of %-inch bars, and 1,700 pounds of %-inch bars.
11. On March 4, 1946, the Bureau’s engineering section issued its requisition for purchase of the project steel requirements, and on March 18, 1946, its purchasing agent issued the first invitation for bids, to be opened April 4, 1946. No bids were received.
The Bureau thereafter reissued the invitation for bids six times during the spring and summer of 1946, and no bids were received. The invitations were issued to an aggregate of 48 suppliers.
12. By letter dated April 4, 1946, the plaintiff submitted to the defendant’s project superintendent a schedule of his steel and cement requirements, requesting periodic deliveries commencing April 20 through June 15, 1946. The project superintendent forwarded the plaintiff’s schedule to the Denver Supply Office, Bureau of Reclamation, which replied to the project superintendent that no bids for steel had been received at the opening on April 4, 1946, but that bids were .being readvertised for opening in approximately three weeks when it was hoped that market conditions would be ■ better and that at least one or two .suppliers would submit bids. On April 22, 1946, the defendant’s project superintendent wrote the plaintiff, enclosing a copy of the letter from' the Denver Supply Office, and advised that there would be some delay in delivery of the plaintiff’s reinforcing steel requirements.
13. On April 25,'1946, the. project, superintendent telegraphed the Bureau at Denver that the plaintiff was con *47 cerned about the probable shutdown of work on account of nondelivery of reinforcing steel, and requested advice as to when shipment could be expected. On April' 26, 1946, the Denver office replied by telegram that no bids were expected on the pending invitation for bids, stated that some contractors had been able to furnish steel on other projects, and recommended that the contractor be requested to attempt to procure the required steel, subject to reimbursement at ceiling prices plus freight and handling charges. The project superintendent promptly advised the plaintiff of this authorization and provided him with a copy of the telegram. On May 1, 1946, the project superintendent advised the Denver office by telegram that the plaintiff had inquired as far as Chicago and was unable to find steel, and that plaintiff was advised that the Bureau had under contract the entire output of a Pueblo, Colorado, manufacturer. On May 2,1946, the Denver office telegraphed the project superintendent that invitations for bids were being readvertised, that no delivery was probable before July, that the Bureau had no contract with the Pueblo concern, that the plaintiff should continue efforts to obtain steel for the next three ■ months, and that if steel was obtained on any advertisement, the Bureau would try to divert enough to keep the plaintiff . working.
14. By telegram transmitted May 2, 1946, the project superintendent informed the Denvér office that plaintiff was advised that War Assets Administration, Salt Lake .City, had a large quantity of reinforcing steel earmarked for other reclamation projects and requested diversion off •some of the steel to the subject contract. The same day the Denver office telegraphed the Bureau office at Salt Lake City and requested telegraphic reply as to whether War Assets had steel available for urgent requirement on the Riverton project. The next day the Salt Lake City office advised the Denver office by telegram that War Assets had no reinforcing steel available in the region, but they had promised to make a nation-wide survey of their offices for steel and that, the Salt Lake City office would keep the Denver office iii- . formed of the results. The same day, the Denver office *48 relayed this information by telegram to the project superintendent.
15. By letter dated May 1,1946, the plaintiff wrote to the defendant’s contracting officer at the Denver office, complained that he was never advised by the defendant that steel would not be available as needed until he received the project superintendent’s letter of April 22,1946, and advised that the project superintendent had been most cooperative in every respect and was arranging to get steel from the Bureau’s yard at Pavillion, Wyoming, which would take care of about 10 percent of the steel requirements and would last only about 5 days of full production. The plaintiff set forth a copy of the Denver office’s telegram to the project superintendent, which had authorized the contractor to furnish steel, and concluded his letter as follows:
We must have definite instructions immediately from your office as to whether you will furnish the required steel, and if so on what date it will be delivered on the job and available for use. If you do not expect to furnish the steel we must know that fact definitely and we must be advised whether the reference in your telegram to freight and handling charges on the steel will include the full cost of the freight or whether you refer only to land grant freight, and whether the reference to handling charge means and includes all handling charges to deliver the steel on the job.
16. By letter dated May 7,1946, in reply to plaintiff’s letter of May 1, 1946, the contracting officer stated that the steel shortage was unforeseen, unpredictable and nation-wide, and that every possible effort to obtain reinforcing steel needed for the Riverton project was being made, but in view of the unsettled industrial conditions, no definite date for steel delivery could be set at that time. He further stated that the project superintendent was fully informed and could answer the questions concerning the supplying of steel by the contractor.
17. Early in May 1946 the project superintendent obtained and caused to be delivered to the project 22,298 pounds of steel bars from the Bureau’s yard at Pavillion, Wyoming. On June 18,1946,10,070 pounds of steel mesh were provided. On June 28,1946, 35,400 pounds of 14-inch round bars were *49 delivered, by the War Assets Administration. Of these, deliveries, only 32,368 pounds'were usable on the project structures. . .
18. On April 16,1946, the Bureau had issued an invitation for bids, to be opened April 30,1946, on the reinforcing steel requirements for its Altus project in Oklahoma. Pursuant thereto, the Sheffield Steel Corporation, Kansas City, Missouri, submitted a bid and was awarded a contract for delivery about July 1, 1946. The Bureau learned that the Altus project contractor had obtained steel from another source, and by letter dated; June 14,1946, directed the Sheffield company to make delivery at Riverton, Wyoming. During June 1946, the Sheffield company had difficulty in manufacturing the steel bars due to shortage of scrap iron and was required to shut down operations for a period of time, resulting in delay of the deliveries to the Riverton project.
. On August 12 and 14, 1946, deliveries of steel bars were received at the Riverton project from the Sheffield company, amounting to 117,317 and 106,226. pounds respectively. These deliveries provided the remaining reinforcement bars required for the completion of the project.
19. Commencing in March, 1946, and continuing until all specified steel or substitutes had been procured and delivered, the defendant exercised great diligence in its efforts to obtain reinforcement steel for the project, and its inability to secure such steel as needed by the contractor is not attributable to any fault on its part.
. All during 1946 it was very difficult to obtain reinforcement steel.
20. The plaintiff placed orders with the project superintendent for cement to be delivered on certain dates in accordance with the proposed rate of concrete placement. The project superintendent relayed these orders promptly to the cement manufacturer. Under its contract with the defendant, the manufacturer was required to deliver the cement within one day after receipt of the order from the. project office. On two occasions the manufacturer did not- deliver promptly, resulting in delays to plaintiff because of lack of cement. From October 2 to October 7, 1946, the plaintiff *50 suspended concrete placing operations because of lack of cement for which orders had been placed by the contractor and by the defendant sufficiently far in advance to have per-mittéd timely delivery. Again from October 19 to October 24, 1946, plaintiff suspended operations because of iack'of cement for which orders had been placed sufficiently in advance to have permitted delivery prior to such'dates.
21. The-plaintiff applied for an extension of time because of the failure of the defendant to furnish reinforcing steel and cement, and in connection with such application the contracting officer made findings of fact dated June 4, 1947, in which it was found that the completion of the work was delayed 91 calendar days during the period from April 20 to August 18, 1946, inclusive, due to the inability of the defendant to furnish a sufficient quantity and proper sizes of reinforcement steel when needed. The contracting officer further found that the completion of the work was delayed 12 calendar days due' to the inability of the defendant to furnish cement-when needed.
The contracting officer also found that as a result of the above delays the concrete work could not be completed before the onset of freezing weather, and it became necessary to suspend concrete placing operations for the winter of 1946-47. The order suspending concrete placing operations extended from November 2,1946, to April 24,1947, or a total of 174 calendar days. As a result of this and the two preceding findings, plaintiff was given an extension of time of 277 calendar days.
Plaintiff on June 12, 1947,. acknowledged receipt of the findings of fact and decision of the contracting officer, and accepted the extension of time.' • .
22. By defendant’s Order For Changes No. 2, dated August 12, 1947, plaintiff was allowed 10 calendar days additional time because of changes in the drawings and specifications.
By findings of fact dated December 3, 1947, the contracting officer extended the contract performance time 20 calendar days from September 12, 1947, the date for completion of the work as fixed by the contract, findings of fact dated June 4,1947, and Order For Changes No. 2, because of additional work performed by plaintiff pursuant to Extra Work *51 Order No. 2. These findings of fact thus fixed the final date of completion of the work as October 2,1947, on which date the work was actually completed.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law plaintiff is not entitled to recover, and the petition is therefore dismissed.
Judgment is rendered against plaintiff for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.

 The contracting officer found that plaintiff had' been unavoidably delayed 91 calendar days because of the inability of defendant to obtain and furnish to plaintiff a sufficient quantity and proper sizes of reinforcing steel when needed.

 From October 2 to October 7, 1946, and from October 19 to October 24, 1946, or a total of 12 days.

 See finding 1.