Williams C. **THOMPSON**
v.
The **UNITED STATES.**
No. 49119.
United States Court of Claims.
Oct. 5, 1954.

Herman J. Galloway, Washington, D. C., for plaintiff. King & King, Washington, D. C., were on the briefs.

Carl Eardley, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for the defendant. Mary K. Fagan, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is an action to recover damages for the alleged breach of a contract between plaintiff and the Bureau of Reclamation. Under this contract plaintiff agreed to perform earthwork and erect structures for an irrigation canal in the Deschutes Project in the state of Oregon, for the unit prices fixed and agreed upon in the contract. Plaintiff contends that the defendant has breached the contract in three instances: (1) failure of the Government to furnish reinforcing steel which resulted in delays for which the defendant is liable; (2) that delays resulted from an inadequate supply of labor for which the defendant is liable; and (3) that the Government is liable for excess costs incurred in concrete operations because the quantity of concrete actually used was less than the estimated quantity.

Defendant contends that no liability exists; that there was no breach of the contract; that the delays for which damages are sought were unavoidable and were contemporaneous with other delays for which the Government was in no way responsible; and that resulting damages, if any, have not been established.

The facts briefly stated are as follows: This suit is brought on a construction contract in the usual form un-

der which the Government agreed to furnish designated materials, including reinforcing steel, and the contractor agreed to furnish other materials and to perform the work. The contract consisted of 17 contract items at agreed unit prices for a total estimated consideration of $245,290.50. The contract was dated August 27, 1945, and notice to proceed was given on October 12, 1945, thus fixing April 30, 1946, as the completion date.

The prime contractor performed, with his own forces, eight items of the work consisting of excavation and related earthwork. On October 15, 1945, he subcontracted five contract items, including reinforcing steel and concrete, to J. D. Proctor, Inc. The prime contractor also subcontracted four other items of the contract to another party who does not appear in these proceedings.

Delays occurred which prolonged the contract work and the time of its completion. Plaintiff sought extensions of time due to unusually severe weather, difficulty in securing adequate labor, scarcity of form material which the contractor was to supply, contract changes, and lack of reinforcing steel which the Government was to provide. One change order was issued which increased the contract price and extended the contract time by 21 days. Three extra work orders were issued which increased the contract price with no change in the completion date.

All work under the contract was completed on August 6, 1946. The completion date of the contract was extended by the contracting officer 77 days (in addition to the 21-day extension for the work covered by change order) for delays of the Government for which plaintiff was not chargeable under the provisions of article 9 of the contract.[1] The

1. Article 9 of the contract reads as follows:

"Article 9. *Delays—Damages.*—If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contractor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set

forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof: *Provided,* That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, if the contractor shall within 10 days from the beginning of any such delay (unless the contracting officer, with the approval of the head of the department or his duly authorized representative, shall grant a further period of time prior to the date of final settlement of the contract) notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the

delays for which extensions were granted were 54 calendar days due to the Government's inability to furnish reinforcing steel, 20 calendar days for insufficiency of labor, and three calendar days for changes in the plans. No liquidated damages were assessed.

Final settlement between the prime contractor and the defendant was effected in January 1947. The release, excepted from it three items for extra costs totaling $139,056.41, the details of which were supplied later. The claim thereafter presented to the contracting officer sought payment of extra costs allegedly incurred by the subcontractor, Proctor, in the sum of $6,144.71 for placing reinforcing steel, and $109,502.-12 for extra costs in connection with concrete structures, as well as the sum of $23,409.48 for added equipment rentals and overhead of the prime contractor. The contracting officer issued his findings of fact and decision denying the claim on December 15, 1947. The contracting officer stated that the claims should be denied as claims for unliquidated damages, although he issued findings of fact on each item of the claim asserted. In connection with the claim for damages for delays resulting from late delivery of reinforcing steel, the contracting officer found that the Government made diligent efforts to secure the necessary reinforcing steel, but due to conditions beyond the control of the Government the steel could not be obtained without delay. On January 12, 1948, plaintiff filed an appeal dated January 7, 1948, with the head of the Department, the Secretary of the Interior, from the decision of the contracting officer. In his appeal he contended that the claims asserted were not claims for unliquidated damages; that he was seeking and was entitled to an equitable adjustment under the provisions of articles 3 and 15 of the contract as a result of changes in the drawings or specifications; and that the decision of the contracting officer was not supported by the

head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of

provisions of the contract or by his findings of fact. The decision of the contracting officer was affirmed by the duly authorized representative of the head of the Department, the Solicitor of the Department of the Interior.

Plaintiff now seeks to recover from the Government damages for himself and his subcontractor, Proctor, resulting from delays for which the contracting officer granted extensions of time under article 9 of the contract; viz, 54 days for late delivery of reinforcing steel and 20 days for inadequate labor together with damages for extra costs in connection with its concrete operations on the ground that the actual quantity of concrete was less than defendant's estimate.

The question on which this case turns is: Did the Government obligate itself to pay damages to the contractor because of delay in furnishing material and labor together with excess costs incurred in concrete operations?

■ Because of the more complex problem presented by the first contention, we will first take up the question of liability of the Government for excess costs incurred in concrete operations. We feel that the plaintiff has presented no legal basis for recovery upon this claim. Any liability of the Government was specifically excluded by the provisions of the contract. Specification 4 (finding 5) provides:

"The quantities noted in the schedule are approximations for comparing bids, *and no claim shall be made against the Government for excess or deficiency therein, actual or relative. Payment at the prices agreed upon will be in full for the completed work* and will cover materials, supplies, labor, tools, machinery, and all other expenditures incident to satisfactory compliance with the contract, unless otherwise specifically provided." [Italics supplied.]

delay and the extension of time for completing the work shall be final and conclusive on the parties hereto."

Specification 49 (finding 5) provides:

" * * * Some of the drawings included in these specifications are typical only of the structures to be constructed and the detail dimensions of the structures as they are to be constructed will be fixed by the contracting officer to adapt the structures to the existing conditions at the structure sites, and the contractor shall be entitled to no additional allowance above the unit prices bid in the schedule by reason of the dimensions fixed by the contracting officer or by reason of any modifications or extensions. * * * "

We hold that the provisions above quoted are plain and unambiguous. Plaintiff is bound by them and is, therefore, not entitled to recover on this claim.

■ Plaintiff next contends that it suffered damage because of delays resulting from an inadequate supply of labor and that defendant is liable. We find no proof in the record that the Government was negligent in providing labor. Furthermore, we find no instance in which plaintiff complained about labor shortages until time extensions were requested to avoid imposition of liquidated damages. Under the circumstances, and because of a complete failure of proof, we believe there was no breach of contract for which the Government can be liable on this claim.

Plaintiff's first, and we believe most serious, contention is that the failure of the Government to furnish reinforcing steel resulted in delays for which the defendant is liable.

We use the well-chosen words of Judge Littleton in the case of Chalender v. United States, 119 F.Supp. 186, 189, 127 Ct.Cl. 557:

"Generally, even though the Government may fail for justifiable reasons, to secure timely delivery of materials which under a construction contract it is required to furnish, no liability for resulting delays will attach, unless it can be found that its representatives were at fault. U. S. v. [Howard P.] Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44; Barling v. U. S., 111 F.Supp. 878 [126 Ct.Cl. 34]. Cf. Torres v. U. S., 112 F.Supp. 363 [126 Ct.Cl. 76]."

■ We believe there was fault on the part of defendant in this case.

Again, quoting from the Chalender case, supra:

"There is present, in a contract such as this one, an implied obligation on the defendant that it will not do that which will hinder the contractor in the performance of the contract. When the contractor is delayed by a negligent act chargeable to the Government, it is a breach of this clearly implied obligation, and the Government is liable for the damages sustained by the contractor because of the delay. [George A.] Fuller Co. v. U. S., 69 F.Supp. 409, 108 Ct.Cl. 70; Kehm Corp. v. U. S., 93 F.Supp. 620, 119 Ct.Cl. 454. Cf. J. J. Kelly Co. v. U. S., 69 F.Supp. 117, 107 Ct.Cl. 594.

"In the absence of evidence to the contrary, when one party agrees to furnish particular materials to be used by the other, he must be held to have agreed 'to furnish them in time to be installed in the ordinary and economical course of the performance of the contract.' Walsh v. U. S., 102 F.Supp. 589, 591, 121 Ct.Cl. 546, 554–555."

In this case defendant is guilty of just such a breach.

Defendant agreed to furnish the reinforcing steel for this project. Unquestionably this was an urgent job. Plaintiff had a right to believe the reinforcing steel would be furnished by the Government in time to complete the job within the contract time, and this the Government failed to do. This very important fact was decided by the contracting officer, who granted an extension of time for this specific failure.

**650**

Defendant contends that this case is on all fours with the case of United States v. Foley, supra. We believe not. In this case we find that the defendant was negligent and at fault. The evidence establishes that defendant was negligent in failing to furnish sufficient reinforcement steel to enable plaintiff to perform the contract in the specified time in an orderly and efficient manner. Notwithstanding the urgency of· this job, the shortness of the time to perform it in, and the vitalness of the reinforcement steel in the performance of the job, defendant (1) did not advertise for bids on the steel until September 4, 1945; (2) upon receiving no bids from any of the 20-odd steel companies invited to bid, defendant only readvertised for 80,000 pounds when it could and should have obtained the estimated 264,000 pounds needed for the job, or at least another 80,000 pounds; (3) made no effort to obtain more than the 80,000 pounds of steel for the job until November 30, 1945; (4) informed plaintiff that more steel had been ordered when in fact it had not; (5) did not authorize for an extended period after its arrival the use of various quantities of steel that defendant and plaintiff had secured in 1946; and (6) did not place orders for the steel, with delivery being delayed if desired, while the steel could still have been obtained under priorities. The evidence also shows that plaintiff could have obtained the steel as an accommodation, as it subsequently in fact did, had defendant apprised plaintiff of its inability to obtain the steel. Also, defendant's agents, who were in constant contact with various steel companies' representatives, were apparently oblivious to the shortage of this type steel caused by the steel companies' desire to manufacture other and more profitable types of steel.

Under the circumstances defendant failed to act diligently and its negligence directly caused the delay here complained of. There is no provision, or room for implication, in the contract permitting defendant to negligently de-

lay the performance of it. On the contrary, we believe that under the circumstances there was an implied warranty upon the part of the Government to provide necessary steel in order that plaintiff could complete the contract in the specified time, and the negligent failure to do so was a breach thereof. These facts distinguish this case from that of United States v. Foley, supra; Barling v. United States, 111 F.Supp. 878, 126 Ct.Cl. 34; Otis Williams & Co. v. United States, 120 Ct.Cl. 249.

The delay occasioned by the negligent failure of defendant to provide reinforcement steel as required caused both the prime contractor and the subcontractor to incur costs which would not otherwise have been necessary.

We find that plaintiff is entitled to recover the costs occasioned by the delay of the defendant in furnishing necessary reinforcement steel.

The case is referred to a Commissioner of this court to determine the amount of such costs which plaintiff is entitled to recover.

JONES, C. J., and MADDEN, WHITAKER and LITTLETON, JJ., concur.