**BEN C. GERWICK, INC.**
v.
**UNITED STATES.**
No. 213–54.

United States Court of Claims.
Jan. 18, 1961.

John W. Gaskins, Washington, D. C., John A. McWhorter, Jr., and King & King, Washington, D. C., on the brief, for plaintiff.

David Orlikoff, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., Alfred H. O. Boudreau, Jr., Washington. D. C., on the brief, for defendant.

LARAMORE, Judge.

This is a suit to recover damages for the alleged breach of a contract between plaintiff and the Bureau of Yards and Docks of the Navy Department. The contract was for the construction of a quay wall, piers, and mooring platforms at the San Francisco Naval Shipyard.

Plaintiff's bid of $4,251,198 was accepted by letter dated June 25, 1946, and by the same letter defendant directed plaintiff to proceed with the work. A formal contract dated June 27, 1946, was thereafter executed. It provided that the work was to be completed within 430 calendar days after receipt by the contractor of the notice to proceed. The

notice to proceed was received on June 27, 1946, which made August 31, 1947, the completion date. For late completion, not excusable under the contract terms, liquidated damages of $1,500 per calendar day were agreed to. Such liquidated damages, which were unusually high for a Navy Department contract at that time were not assessed against plaintiff.

At the time of the defendant's issuance and the plaintiff's receipt of the notice to proceed, plaintiff could not proceed with the work because the site was not available, and because the defendant had not furnished certain steel sheet piles required for performance.

The contract provided that the Government would excavate, under another contract, the trenches for the quay wall and piers and place the sand blankets therein. Under this other contract, the entire site of plaintiff's work was also to be dredged.

Plaintiff, as a joint venturer with another contractor, submitted a bid on the dredging specifications, but the bid was not accepted. The dredging contract, dated June 25, 1946, was awarded to a joint venture, Case-American Construction Company, a well-known contractor which had previously performed numerous dredging contracts for the defendant.

Notice of award and notice to proceed with the work on the dredging contract were issued by defendant on June 24, 1946, and received by Case-American on June 25, 1946, which was the day of the opening of bids on plaintiff's contract and issuance of notice of award and notice to proceed to plaintiff. Two days later plaintiff received defendant's notice to proceed.

In preparing its bid on its contract, plaintiff did not assume that all of the work under the dredging contract would have to be completed before construction of the quay wall and piers could commence. To enable plaintiff to begin work, it was necessary that the dredging work be completed in the area from the shoreline past the quay wall site to about one-fourth of the inboard ends of the two piers, with the necessary trenches for the quay walls and two piers excavated and sandfilled in that area. Plaintiff reasonably assumed that priority would be given to that part of the dredging work. The dredging and sandfilling of trenches on the remaining area of plaintiff's site did not have to be completed before plaintiff could commence its work, and the dredging in that area and in the approach area outboard of plaintiff's work could be performed simultaneously with plaintiff's work without interference between the two operations. Plaintiff assumed that the defendant would require that the dredging work be completed, first at the site of the quay wall and the inboard ends of the piers and that it would be able to commence its work by approximately October 1, 1946.

Sufficient site for plaintiff to commence work did not become available until January 20, 1947, when the site of Pier No. 2 instead of Pier No. 1 became available. The entire site of plaintiff's work became available on February 15, 1947. The dredging contract was completed on February 17, 1947, 87 calendar days after the specified completion date.

During the performance of the dredging contract, defendant's Officer in Charge frequently met with Case-American's superintendent and orally expressed dissatisfaction with the rate of progress of the dredging work. He repeatedly urged that Case-American employ more equipment. However, he did not order that more equipment be added because he believed that the defendant's agents had no right under the contract to direct the method of accomplishing the contract, but were limited to the sanctions provided by the contract, which were assessing liquidated damages of $400 per day of delay, or terminating the contract for default.

Defendant's Officer in Charge did not recommend termination of the dredging contract to his Contracting Officer on account of Case-American's delays in performance because it was his belief that such procedures would cause even great-

er delay in completion due to the necessity of surveying the uncompleted job and preparing specifications for and re-letting another contract for the work.

The performance of the dredging contract having been delayed 87 calendar days beyond the date provided for completion, Case-American requested extensions of time totaling 85.23 calendar days. The total of the time extensions recommended by defendant's Officer in Charge amounted to 45 calendar days.

On April 1, 1947, defendant's Contracting Officer concurred in the recommendations of the Officer in Charge, and accordingly a change order was issued to Case-American by the defendant, which extended the contract completion time by 45 calendar days to January 6, 1947.

Liquidated damages for the remaining 42 days of delay in completing the dredging contract were assessed against Case-American in the sum of $16,800 at the contract rate of $400 per day.

As provided in plaintiff's contract and specifications, the defendant was to furnish all the steel sheet piles required for constructing the quay wall. These piles were not furnished on time, and when they were delivered, it was not in the order in which they were needed for use on the project.

Independently of the delay due to unavailability of the site, the commencement of the construction of the quay wall was delayed 154 calendar days after January 20, 1947, the date when the site first became available, and until June 24, 1947, when defendant first supplied sufficient piles necessary for commencement of that operation.

The contract performance time of 430 calendar days, if extended from January 20, 1947, would have required completion of all work by March 25, 1948. Pursuant to plaintiff's letter request of January 28, 1947, repeated on September 4, 1947, defendant's Officer in Charge recommended on September 19, 1947, that due to unavailability of the site, plaintiff's contract performance time be ex-

tended by 207 calendar days, being the entire period from June 27, 1946, the date of plaintiff's receipt of notice to proceed, to January 20, 1947. On the basis of his recommendation, the contract completion date would have been extended to March 25, 1948. Defendant's Contracting Officer, however, reduced the 207 days by the 10 days considered to be necessary for assembly of labor and equipment, which preparatory time it was concluded plaintiff had had prior to availability of the site. Defendant on December 4, 1947, issued, and plaintiff accepted, a contract change order, by which plaintiff's performance time was extended on account of unavailability of the site by 197 calendar days to March 15, 1948.

The piers and mooring platforms were substantially completed by that date. The delayed delivery of piles, however, prevented completion of the driving of the quay wall until October 29, 1947, and the sand backfilling in and behind the quay wall until February 10, 1948, despite diligent operations by the plaintiff. It was then impossible to complete installation of the required facilities in and behind the quay wall by March 15, 1948, the contract completion time as extended on account of unavailability of the site.

By change order dated July 3, 1947, defendant required substantial additional work on the pumping plant to be located pursuant to the contract, in the sand fill areas behind the quay wall. The agreed price of this change was $195,900, which was added to the contract price.

The work upon and behind the quay wall, as well as on the project as a whole, was substantially completed by June 15, 1948. The exceptions concerned installation of some electrical equipment and corrections of defects in portions of the work. Defendant subsequently accepted the project work as substantially completed on June 15, 1948, with minor exceptions.

Pursuant to plaintiff's letter request dated June 24, 1947, repeated by its letter dated September 4, 1947, defendant's

Officer in Charge on January 12, 1948, recommended to defendant's Contracting Officer that plaintiff's contract performance be further extended an additional 154 calendar days, or to August 16, 1948, because of defendant's delays in furnishing steel sheet piles for the quay wall. This proposed extension was in addition to that of 197 calendar days previously allowed for unavailability of the site, which extended the contract completion date to March 15, 1948. On January 28, 1948, defendant's Officer in Charge further advised the Contracting Officer that the contract completion date would be determined by delivery of electric motors for salt water pumps, and that the contract performance should be completed by June 15, 1948, which was 92 calendar days after March 15, 1948.

By change order dated April 16, 1948, *the defendant's Contracting Officer found that due to the defendant's delay in furnishing the steel sheet piles, the progress of the plaintiff's work was delayed 92 calendar days,* and accordingly extended the contract time for completion by that number of days to and including June 15, 1948.

By letter dated August 4, 1948, defendant accepted the work under plaintiff's contract as complete as of June 15, 1948, except for the installation of two pump motors for the pumphouse, two minor items of corrective work, and certain Burndy mole installations. This remaining work, except for the Burndy moles, required a maximum of three days for performance.

The two motors for the pumphouse were eventually delivered and installed. By change order dated November 16, 1948, defendant's Contracting Officer found that due to delays in procurement beyond the plaintiff's control, the progress of the work on the subject contract had been delayed 126 calendar days, and accordingly extended the contract completion date to and including October 19, 1948.

Ultimately plaintiff received and installed the replacement Burndy moles, and after another series of tests, the defendant accepted the contract work as complete as of May 6, 1949. By change order dated June 13, 1949, defendant's Contracting Officer directed that the contract completion date be further extended by 199 calendar days to and including May 6, 1949.

Plaintiff's claim for additional costs resulting from delays in furnishing the site and the necessary steel sheet piles was from time to time the subject matter of correspondence and conferences between the parties. Thereafter by speedletter dated October 9, 1947, the defendant's Contracting Officer advised defendant's Officer in Charge that under well-established rules of law plaintiff's claim for damages for delays could not be administratively considered, but was within the exclusive purview of the Court of Claims, and that the contractor should be advised that this was a final decision of the Contracting Officer. By letter dated October 20, 1947, defendant's Officer in Charge transmitted this information to plaintiff and advised that it constituted a final decision. By letter to the Contracting Officer dated November 5, 1947, plaintiff reviewed in detail the facts concerning its claim and requested reconsideration of the decision of October 20, 1947. In order to comply with the contract requirement that an appeal be taken from a final decision of the Contracting Officer within thirty days, plaintiff also appealed to the Secretary of the Navy by two letters, each dated November 18, 1947, covering respectively the claim for delay in availability of the site and the delay in furnishing steel sheet piles. By letter dated December 2, 1947, defendant's Contracting Officer replied to plaintiff's request for reconsideration, and stated that his decision must remain the same since plaintiff's claims were for unliquidated damages, settlement of which was beyond his authority. He also stated that this was his final decision under Article 16 of the contract. By letter to the Secretary of the Navy dated December 30, 1947, plaintiff appealed from this last decision of the Contracting Officer.

The appeals were docketed before the Navy Board of Contract Appeals, the authorized representative of the Secretary of the Navy. Counsel for Yards and Docks then moved to dismiss the appeals because they were claims for unliquidated damages, beyond the jurisdiction of the Board. By its written decision dated November 28, 1949, the Board sustained the motion in part and dismissed plaintiff's appeals to the extent that they concerned claims for damages for delays in availability of site and furnishing by the defendant of steel sheet piles. The Board otherwise overruled the motion as it concerned plaintiff's allegations that defendant had directed plaintiff to accelerate the work after the delays had ended. Thereafter, a hearing was held before the Board on the limited issue, and by written decision dated July 3, 1952, the Board stated that the defendant had not ordered the acceleration of the performance of plaintiff's contract, and plaintiff's appeals were accordingly denied. Plaintiff's claim as presented to this court does not include the administrative claim for additional costs for the alleged acceleration of the work. It is based on damages allegedly sustained as a result of delays in (1) making the worksite available, and (2) furnishing the steel piles.

The facts set out above are, we think, sufficient to an understanding of the case. As found by a commissioner of this court, they are much more detailed, and have been extensively excepted to by both parties. We have carefully considered each exception in light of the evidence adduced at trial, and adopt the commissioner's findings. No useful purpose could be served by discussing each exception in detail.

■ Respecting the first basis of plaintiff's claim, the alleged delay in making the worksite available, we conclude that the delay was caused by the failure of the dredging contractor to complete its work on schedule, and thereby allow plaintiff to begin performance under its contract on the contemplated date.

■ Plaintiff contends that the contract contained an implied obligation that defendant would affirmatively cooperate to make possible the performance of the work within the contract time, and would not through lack of diligence or negligence delay the work, or render its performance more expensive. While this is true, we cannot concur in the plaintiff's position that defendant's Officer in Charge was negligent in his administration of the dredging contract. Plaintiff states repeatedly that the Officer in Charge should have ordered the dredging contractor to do this or do that. The Officer in Charge could not order the dredging contractor to do anything. He could make suggestions, and in an attempt to have them heeded threaten to recommend invocation of the contract sanctions, namely, assessing liquidated damages, or terminating the contract for default. Liquidated damages were assessed. Termination for default was not recommended because the Officer in Charge believed that such action would cause even greater delay in completion due to the necessity of surveying the uncompleted job and preparing specifications for and reletting another contract for the dredging work. This was a reasonable determination.

■ The delay in availability of the site of plaintiff's work resulted from the delays by the dredging contractor in the performance of the dredging contract. It follows that if the defendant was not at fault, it is not liable in damages for the delays caused by another contractor. Standard Accident Insurance Co. v. United States, 102 Ct.Cl. 770, 790, certiorari denied 325 U.S. 870, 65 S.Ct. 1409, 89 L.Ed. 1989. Furthermore, unless the Government expressly covenants to make the site available at a particular time, plaintiff has the burden of proving that the United States was in some way at fault because the site did not become available to it at an earlier date. United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44. Since plaintiff has failed to prove fault or neg-

ligence on the part of the United States, his claim, in this respect, must fail.

The second basis for plaintiff's claim is that the Government was negligent in fulfilling its obligation to furnish the steel sheet piles for the quay wall when reasonably needed for the performance of the contract.

As provided in the contract and specifications, the defendant was to furnish all the steel sheet piles required for the construction of the quay wall. Plaintiff reasonably intended to start driving the piles for the quay wall at the outset of its operations, as the driving of the piles had to precede the remainder of the work.

The defendant contends that the delays in delivery of the steel sheet piles to plaintiff were not its fault, because it was not negligent in its efforts to procure the piles, and because at the time involved, steel was difficult to obtain. In this respect, defendant says it negotiated with the Carnegie-Illinois Steel Corp. for two months before agreement for the procurement of steel was reached. The negotiations were so protracted because Carnegie-Illinois demanded a price readjustment clause, and the defendant felt that the provisions of 34 Stat. 49 prevented an open-end price clause for the reason that it would be impossible to determine in advance whether contractual obligations would exceed budgetary and appropriation limitations. However, when the defendant finally did contract for the steel sheet piles, it was on practically the same contractual basis as originally demanded by Carnegie-Illinois and refused by the Government.

At numerous conferences, and by many letters, inquiry was made by plaintiff as to when the steel sheet piles would be delivered. Both parties understood plaintiff needed the piles as soon as possible. Each time plaintiff was informed by defendant that no difficulty would be encountered in the procurement of the steel. Plaintiff even suggested that it be allowed to order steel itself if any difficulty in procurement was anticipated. Never was a sufficient amount of steel piling delivered to plaintiff so as to permit construction completion without delay. Although the defendant well knew from the contract drawings and specifications that the special piles were needed for the commencement and continued progress of construction of the quay wall, defendant failed to exercise reasonable diligence to provide the piles in the order in which they would be required for use on the project.

Defendant cites the case of Barling v. United States, 111 F.Supp. 878, 126 Ct.Cl. 34, to support its contention that it was not negligent in procuring the steel piles. However, as we indicated in Barling; Otis Williams & Company v. United States, 120 Ct.Cl. 249; and Thompson v. United States, 124 F.Supp. 645, 130 Ct.Cl. 1, each one of these cases turns on its own facts, since the question to be answered is whether or not the Government was negligent or at fault in providing supplies to the contractor that the contract called for it to so provide.

From all of the evidence in this case we find that the defendant was negligent and lacking in reasonable diligence in fulfilling its obligation to furnish the steel sheet piles for the quay wall when reasonably needed in the performance of the contract, and that as a result of such negligence and lack of diligence, plaintiff was delayed in its over-all performance of the contract to the extent of 92 calendar days.

In his findings of fact which we adopt as the findings of the court, the commissioner has found that plaintiff's increased costs caused by the defendant's actionable delay in furnishing steel sheet piles was $71,149.28, broken down as follows:

| | |
|---|---:|
| Field Office Salaries | $23,673.44 |
| Other Field Office Overhead | 2,573.24 |
| Equipment Ownership Expense | 2,643.81 |
| Equipment Ownership Expense | 4,980.95 |
| Wage Increases | 3,268.31 |
| General Overhead Expense | 28,453.76 |
| Installation of Special Pile | 873.60 |
| Prevention of teredo damages | 4,682.17 |
| Total Increased Costs | $71,149.28 |

In addition, plaintiff will be obligated to pay an additional amount of one percent for bond premium, or $711.49, which percentage must be paid to plaintiff's bonding company on any amount recovered on plaintiff's claim. Including such additional bond premium, the total of plaintiff's additional costs is $71,860.77.

We see no reason for repeating here the facts and formulae upon which the commissioner reached the ultimate finding of $71,149.28 in increased costs. They are set out in findings 70 through 77.

Damages in the amount of $71,860.77 were sustained as a result of defendant's breach, and judgment in that amount will be entered for plaintiff.

It is so ordered.

JONES, Chief Judge, and DURFEE, MADDEN, and WHITAKER, Judges, concur.