## OWEN v. UNITED STATES.

### No. 42528.

Court of Claims.

Nov. 5, 1934.

1925.

D. J. Gantt, of Atlanta, Ga., for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

This suit is brought to recover the amount of $4,494.51 income tax for the year 1925, paid on March 28, 1929, together with interest thereon. The plaintiff alleges that the Commissioner of Internal Revenue in computing the income of the Kenilworth Park Company for the year 1925 erroneously included certain promissory notes at their face value in determining the profits from the sale of certain real estate, and that he should have included in the gross income only the amount actually paid thereon in cash for the reason that said notes did not have any fair market value in 1925.

Under these allegations the issue is one of fact as to whether the plaintiff has shown by a preponderance of the evidence that the Commissioner fixed the amount of the income of said company for the year 1925 at too high an amount and also what the correct amount was.

The evidence shows that the notes were given in payment for sales of real estate around Winter Haven, Fla., at a time when such transactions were very active, and in ordinary parlance the region was "enjoying a boom." We may assume that most of the transactions were entered into for speculative purposes, and it is quite evident that notes given in the course thereof could not be sold for their full face value. Under such circumstances, when the boom was over or had collapsed it is quite evident that such notes would have no market value and would be unsalable for any substantial sum unless the makers thereof were individually responsible. The defect in plaintiff's case is that the evidence fails to show whether the boom ended in 1925 or 1926, or anything whatever as to the responsibility of the makers of the notes in controversy. On the other hand, the evidence shows that in 1926 $47,521.58 was collected on notes made and given in 1925 by purchasers of lots, and even in the year 1927 $42,226.92 was collected thereon. This showed plainly that some of the makers of these notes were able and willing to pay them. There was, it is true, due at the end

of the year 1925 $241,480.20 on notes. We are not disposed to determine the exact weight and effect of evidence as to what happened subsequently, but we think the fact that about one-third of these notes was afterwards paid tends to rebut the claim of plaintiff that they had no substantial value, and on the whole of the evidence we have found that it fails to show what the value of the notes in controversy was in 1925. The Commissioner may have erred in making his computation on the basis that these notes were worth the full face value. Notes of this kind would have no market value in the sense that the term "market value" is generally used. But we think they had some substantial value, and, as the plaintiff has failed to show what that value was, we cannot say in what amount the Commissioner erred in making his assessment.

It follows that plaintiff's petition must be dismissed, and it is so ordered.

BOOTH, Chief Justice, and WHALEY, WILLIAMS, and LITTLETON, Judges, concur.