ROBERT GRAHAM SPENCE, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

No. 11264. Argued May 2, 1955.—Decided June 14, 1955.

390

*José Trías Monge, Attorney General,* and *J. C. Santiago Matos, Assistant Attorney General,* for appellant. *J. A. Cintrón Rivera* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Secretary of the Treasury notified appellee Robert Graham Spence of an income tax deficiency for the taxable year 1948 in the amount of $3,927.45, including interest until December 1952. The deficiency arose when the Secretary of the Treasury determined that the full capital gain realized by Graham in the sale of certain real property in 1948 was taxable that year.

There is no controversy as to the amount of the gain obtained by the taxpayer from that sale. However, treating the transaction as an installment of deferred payment sale, the taxpayer considered that the tax levied on the gain should be proportionately divided among several years and not paid in a single year, as determined by the Secretary of the Treasury. The controversy was thus posed before the Superior Court to which Graham Spence resorted. After a trial on the merits the court rendered judgment upholding the taxpayer's contention.

The Secretary of the Treasury appealed and alleges in his brief that the lower court erred (1) in not deciding that

plaintiff did not prove his case, and (2) in concluding that the three promissory notes subscribed and given to the vendor, plaintiff herein, had no value whatsoever.

The record discloses the following facts:

In December 1948 Robert Graham Spence sold by public deed to the *Asociación de Señoras Damas del Santo Asilo de Ponce*, a nonprofit institution, several real properties for the price of $50,000. It was stated in the deed that the purchaser was paying the selling price in the following manner: $5,000 which the vendor confessed having received in September 1948, and $1,750 which he also confessed having received on the same date; $13,225 which was given to him on the execution of the deed; and $30,000 which remained as deferred payment, and which the purchaser promised to pay at the rate of $10,000 annually with interest at 6 per cent per annum, which deferred payment was represented by three promissory notes issued by the purchaser in favor of the vendor or to his order, to mature on December 16 of each of the years 1949, 1950 and 1951. That deferred payment was not secured by a mortgage or any other lien on the realty sold.

At the trial the parties stipulated that the purchaser, *Asociación de Señoras Damas del Santo Asilo de Ponce*, was a non-profit institution; that it was solvent and that it possessed other properties. Plaintiff-appellee introduced in evidence, and the court admitted it, two of the three promissory notes which represented the deferred payments, duly cancelled, since they were paid several days after maturity. The parties did not offer any other evidence to prove whether or not the promissory notes had a market value on the date of execution.[1]

---

[1] The trial court states in its conclusions of law:

"There was no specific evidence introduced by either of the parties as to whether or not those personal promissory notes signed by the purchasing Association which is a non-profit institution, had a market value for the public in general."

In view of the evidence which was introduced at the trial we are bound to conclude that the errors assigned by appellant were committed.

■■■ Section 5(c) of our Income Tax Act [2] provides: "The amount realized from the sale or other disposition of property shall be the sum of any moneys received plus the fair market value of the property (other than money) received." And § 5(e) provides that: "Nothing in this section shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of the portion of any installment payment representing gain or profit in the year in which such payment is received." Pursuant to § 82 of Regulation No. 1 of the Treasurer, now Secretary of the Treasury, to implement the Income Tax Act, the deferred payment sales of real estate ordinarily fall into two classes when considered with respect to the terms of sale, as follows: (1) Installment transactions, in which the initial payment is relatively small (generally less than one-fourth of the purchase price) and the deferred payments usually small and of reduced amounts and (2) deferred payment sales not on the installment plan, in which there is a substantial initial payment (ordinarily not less than one-fourth of the purchase price), deferred payments being secured by a mortgage or other lien. Section 83 of the same Regulation provides that in the transactions included in class (1) of § 82, installment obligations assumed by the buyer are not ordinarily to be regarded as having a fair market value, and the vendor may report as income from such transactions in any year the proportion of each payment actually received in that year which the gross profit to be realized when the property is paid for bears to the gross contract price. And pursuant to § 84 in class (2) of § 82, if the obligations have a fair market value, they are to be considered as the equivalent of cash

[2] This section was in force in the year 1948 and has not been amended. See 13 L.P.R.A. § 663.

and the property realized from the transaction is taxable income for the year in which the initial payment was made and the obligation assumed.

As we have seen, the selling price in this case was $50,000. The initial payment was $20,000, that is, more than one-fourth of the purchase price. The transaction, therefore, was not included in class (1) of § 82 of the Regulation. We have also seen that the obligations assumed by the purchaser, evidenced by three personal promissory notes, are not secured by a mortgage or other lien. Technically, the absence of this condition would also exclude the transaction from class (2) of § 82.

In any event, this Court has previously said that the provisions included in §§ 82, 83 and 84 of the Regulation are not mandatory, rigid or categoric. They are merely directory. *Rubert* v. *Tax Court*, 74 P.R.R. 48, 65. We also said in that case that "the general rule, in the absence of any provision of a statute or regulation to the contrary, is to the effect that the doctrine of the 'equivalent of cash' is to be applied to an instalment sale, that is, generally, when the purchase price is represented by cash and by property which is the equivalent of cash, the full gain must be recognized in the taxable year in which the property is sold or disposed of. 2 Mertens 41 § 11.05." It is thus provided by § 5(c) of our Income Tax Act, and as we have already seen, there is no other legal provision against it. Furthermore we said in the *Rubert* case that "the burden of proof falls on the taxpayers to avoid the payment of taxes in a single year."

In this case the Secretary of the Treasury determined, upon notifying the taxpayer of the deficiency, that he should pay the full tax on the gain in the year the sale was executed. The official's decision implicitly carried the determination that the obligations assumed by the purchaser had a fair market value. Every tax determination made by the Secretary of the Treasury is presumed to be correct and

it is incumbent on the taxpayer to overcome such presumption. *García* v. *Sec. of the Treas.*, 76 P.R.R. 471; *Brown* v. *Tax Court*, 74 P.R.R. 244; *González* v. *Tax Court*, 73 P.R.R. 24, 32; *Treasurer* v. *Tax Court*, 70 P.R.R. 210, 215. This official's determination as to whether the obligations assumed by the purchaser in this case had a fair market value will stand unless overcome by sufficient evidence. *Owen* v. *United States*, 8 F. Supp. 707; *Marshall Field, Glore, Ward & Co.*, v. *Commissioner*, 16 B.T.A. 1299; *Nichols* v. *Comm. of Int. Rev.*, 44 F. 2d 157; *Whitlow* v. *Comm. of Int. Rev.*, 82 F. 2d 569; *Williams* v. *Comm. of Int. Rev.*, 45 F. 2d 61.

Appellee failed to present any evidence to show that the three promissory notes issued by the purchaser, as evidence of the obligations which the latter had assumed, had no fair market value. He seems to have rested exclusively on the fact that the purchaser is a non-profit institution and that the obligations were not secured by a mortgage or other lien. This by itself fails to overcome the presumption in favor of the correctness of the tax determination of the Secretary of the Treasury. In addition to the foregoing facts the evidence showed, and this is not favorable to the taxpayer's contention, that the promissory notes had no fair market value, that the purchaser is a solvent institution, and that it is the owner of other properties, and that two of the three promissory notes issued by the purchaser were promptly paid when due. The fact that the notes were paid when due is a factor often considered by the courts in determining market value, although such fact alone is not conclusive of value at time of receipt. 2 Mertens 50, § 11:07; *Owen* v. *United States*, *supra;* *Piper* v. *Comm. of Int. Rev.*, 84 F. 2d 560; *Whitlow* v. *Com. of Int. Rev.*, *supra.*

In view of the foregoing we must conclude that the appellee failed to prove his case by not introducing evidence to overcome the presumption in favor of the correctness of the Secretary of the Treasury's determination, and that on the

contrary there is evidence in the record tending to support the truth of this presumption.

For the foregoing reasons, the judgment appealed from will be reversed, the complaint dismissed and the case remanded to the lower court for further proceedings.