UNITED STATES *v.* HOWARD P. FOLEY CO., INC.

No. 50.  Argued October 25, 1946.—Decided November 25, 1946.

*A. Devitt Vanech* argued the cause for the United States. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Sonnett, Stanley M. Silverberg, Paul A. Sweeney, Abraham J. Harris* and *M. M. Heuser.*

*Alexander M. Heron* argued the cause for respondent. With him on the brief was *William L. Owen.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The Court of Claims rendered a judgment for the respondent and against the Government for an asserted breach of a construction contract. 105 Ct. Cl. 161, 63 F. Supp. 209. We granted the Government's petition for certiorari which alleged that the Court of Claims' decision was in direct conflict with *Crook Co.* v. *United States,* 270 U. S. 4, and *United States* v. *Rice,* 317 U. S. 61. We hold that the Government's contention is correct.

The respondent, an electrical contractor, agreed for a fixed fee to supply the materials for and install a field lighting system at the National Airport, Gravelly Point, Virginia, then under construction. The agreement was embodied in a standard form Government contract. Respondent promised to complete the job within 120 days after notice to proceed. In fact the job was not finished until 277 days after notice was given. The delay came

about in this way. The site of the airport was being built up from under water by a fast but then unique method of hydraulic dredging. As portions of the earth base for the runways and taxiways settled, they were to be paved and the shoulders "rough-graded." As segments of this work were finished, respondent was to move in, wire them, and install the lighting fixtures. The dredging took longer than Government engineers had anticipated, because some of the dredged soil, proving to be too unstable for runways and taxiways, had to be replaced. This in turn delayed completion of the runway sections; and, until each was finished, the lighting equipment for each segment could not be installed. The 157 days delay resulted from the consequently long and irregular intervals between the times when these segments were made available to respondent to do its job. But for these delays, respondent apparently could have finished its work in 120 days.

The Court of Claims considered that the Government breached its contract by failing to make the runways available in time for respondent to do its work within 120 days. The judgment against the Government was for certain overhead and administrative expenses which respondent incurred during the consequent period of delay.[1]

In no single word, clause, or sentence in the contract does the Government expressly covenant to make the runways available to respondent at any particular time. *Cf. United States v. Blair,* 321 U. S. 730, 733–734. It is suggested that the obligation of respondent to complete the job in 120 days can be inverted into a promise by the Government not to cause performance to be delayed beyond that time by its negligence. But even if this provision stand-

---

[1] The damages awarded were for the wages respondent paid supervisory employees who stood by during the delay intervals, and for certain expenses of respondent incurred on account of these employees for unemployment and similar taxes.

ing alone could be stretched to mean that the Government obligated itself to exercise the highest degree of diligence and the utmost good faith in efforts to make the runways promptly available, the facts of this case would show no breach of such an undertaking. For the Court of Claims found that the Government's representatives did this work "with great, if not unusual, diligence," and that "no fault is or can be attributed to them." Consequently, the Government cannot be held liable unless the contract can be interpreted to imply an unqualified warranty to make the runways promptly available.

We can find no such warranty if we are to be consistent with our *Crook* and *Rice* decisions, *supra*. The pertinent provisions in the instant contract are, in every respect here material, substantially the same as those which were held in the former cases to impose no obligation on the Government to pay damages for delay. Here, as in the former cases, there are several contract provisions which showed that the parties not only anticipated that the Government might not finish its work as originally planned, but also provided in advance to protect the contractor from the consequences of such governmental delay, should it occur. The contract reserved a governmental right to make changes in the work which might cause interruption and delay, required respondent to coordinate his work with the other work being done on the site, and clearly contemplated that he would take up his work on the runway sections as they were intermittently completed and paved. Article 9 of the contract, entitled "Delays—Damages," set out a procedure to govern both parties in case of respondent's delay in completion, whether such delay was caused by respondent, the Government, or other causes. If delay were caused by respondent, the Government could terminate the contract, take over the work, and hold respondent and its sureties liable. Or, in the alternative, the Govern-

ment could collect liquidated damages. If, on the other hand, delay were due to "acts of the Government" or other specified events, including "unforeseeable causes," procedure was outlined for extending the time in which respondent was required to complete its contract, and relieving him from the penalties of contract termination or liquidated damages.

In the *Crook* and *Rice* cases we held that the Government could not be held liable for delay in making its work available to contractors unless the terms of the contract imposed such liability. Those contracts, practically identical with the one here, were held to impose none. See also *United States* v. *Blair, supra.* The distinction which the Court of Claims found between this and the prior cases is not in point. It seems to be this: In the *Crook* and *Rice* cases the Government had a prime and a subcontractor: the Government reserved a right to make changes by which the prime contractor must thereafter be governed; the Government exercised this right; these changes made it impossible for the prime contractor and ultimately the subcontractor to do their work in time; since the Government had reserved the right against the prime contractor to make these changes, and the subcontractor knew this, the Government was not contractually responsible for the delay. Therefore it is suggested that the subcontractor in the *Rice* and *Crook* cases could know in advance that the performance time was "provisional," whereas here the contractor had reason to believe that it was certain. But in this case there is ample indication, both in the extrinsic facts and in the contract terms, that changes and delays were anticipated and remedies therefor provided. The contractor here only lacked the one additional indication that changes were anticipated which he could have read from the prime contract had there been a prime contract and if a prime contract had been available for him to read. If this be a distinction, it is a distinction

with no significant difference. This contract, like the others, shows that changes and delays were anticipated and provided for. The question on which all these cases turn is: Did the Government obligate itself to pay damages to a contractor solely because of delay in making the work available? We hold again that it did not for the reasons elaborated in the *Crook* and *Rice* decisions.

*Reversed.*

Mr. Justice Reed, Mr. Justice Frankfurter, and Mr. Justice Jackson dissent. It is admitted that the Government had given the contractor "notice to proceed" which in our opinion had the legal consequences set forth in the opinion of the court below whose judgment we would affirm.