JoNes, Chief Judge,
delivered the opinion of the court:
Plaintiff claims damages for alleged excess costs, extra work, and delays under a contract in connection with a flood control project authorized as a public work under the National Industrial Recovery Act.. The entire project covered areas in three counties in the Muskingum river valley in Ohio. It involved the construction of a number of dams, reservoirs, and levees, as well as the relocation of parts of nine different railroad lines and several utility lines.
Contracts for different phases of the extensive project were made with various companies. The relocation of the railroad lines required the construction of 11 bridges, the contract for which was awarded to the Mt. Vernon Bridge Company. The contract in suit was for the relocation of 14.6 miles of the Wheeling and Lake Erie Railway line. This 14.6 miles included 719.66 feet of track to be laid on the three bridges to be constructed by the Mt. Vernon Bridge Company on the new Wheeling and Lake Erie line.
The progress of the various companies on the project naturally affected to some extent the work of plaintiff, and the Corps of Engineers undertook to coordinate the timing of the work of the various contractors, and especially that of the Mt. Vernon Bridge Company, with the several railroad relocation contractors. The Government’s contracting officer for the contracts of both the plaintiff and the Mt. Vernon Bridge Company was the district engineer at Zanesville, Ohio.
Under the contract, pertinent provisions of which are set forth in findings 67 through 117, plaintiff was required to relocate 139,870 feet of main and side track. Plaintiff was to do all the necessary clearing, grubbing, and grading for *813 the roadbed, to lay the ties and tracks, to build underpasses, trestles, culverts, and drainage facilities, and to remove the ties, tracks and bridges from the abandoned portion of the old line. Plaintiff’s bid covered unit prices for 80 separate items. Plaintiff was to furnish all labor and materials and do all work necessary for relocation in accordance with the specifications. Findings 5 and 6 further detail the work required of plaintiff.
Different periods were allotted for different parts of the work, and the entire contract was to be completed within 500 days after notice to proceed. That notice was given on October 26, 1935. During the progress of the work 30 change orders were issued. In 22 of the change orders there were upward adjustments in price. The time for completion was finally extended to September 12,1938, on which date the work was completed and accepted. No liquidated damages were assessed.
Final settlement was made in January 1939, and the following release was signed by plaintiff, specifying certain exceptions:
Pursuant to Article 16 (d) of Contract W968 eng-115 dated July 13, 1935, for relocation of the Wheeling and Lake Erie Eailroad in the Dover Eeservoir, Ohio, we, The Arundel Corporation, of Baltimore, Md., do hereby release the TJ. S. Government of all claims against the Government arising under and by virtue of this contract unless specifically excepted in stated amounts set forth herein.
Additional Cost of Resloping Cuts in 1937 (see claim our letter February 2,1938)-$3,487.22
Additional Cost on Account of Delays to contract by the Government (details to be submitted as soon as cost can be determined) approximately- 85,000. 00
Payment for Excavation for Cast Iron Water Lines (details to be submitted) approximately- 6,000.00
Total_ 94,487.22
It is on these excepted claims that plaintiff is here suing.
DELAYS
There were a number of delays in the performance of the contract, and completion date was ultimately extended to September 12, 1938, a total of 1,049 days for what had *814 originally been a 500-day contract. Claim for costs incident to delays was first asserted in January 1939, when plaintiff acknowledged receipt of the proposed release and final voucher. The claim was excepted from the release but no further mention of it was made until plaintiff’s comprehensive claim letter of May 23,1944, to the district engineer who had succeeded the contracting officer.
There were four basic causes for the extension of the time required for completion. First, there were delays in obtaining the necessary rights-of-way. In March 1934, the Muskingum Watershed Conservancy District, a political subdivision of the State of Ohio, had obligated itself to defendant to secure the land for the entire project, by title or easement. The Conservancy District did not complete this until some months after plaintiff received its notice to proceed.
Second, there was much bad weather and wet ground which naturally hampered operations. Third, extra work took up additional time. And finally, completion was delayed by the failure of the Wheeling and Lake Erie Bail-way Company to release its old line after the new one had been completed.
It is not established that any of the delays were caused by any act of omission or commission on the part of defendant or any of its representatives, except in the instance of the extra work. All of the extra work, however, was covered by change orders. Eight of the thirty change orders provided for an extension of time, and the others specifically provided that no additional time would be allowed. Plaintiff accepted all of the change orders without protest, and no appeal was taken from any of them. The work was completed and accepted within the extended time, and no liquidated damages were assessed.
The contract, Article 9, provided that commensurate extensions of time would be granted where there were such delays, but contained nothing as to any further consequences of those delays. None of the delays was shown to be the fault of the defendant and there can be no recovery for damages which might have been caused by those delays. United States v. Foley, 329 U. S. 64; Eisenberg & Sons v. United States, 110 C. Cls. 388, 429.
*815 EESLOPING AND BENCHING OP CUTS
Plaintiff’s claim under this heading is for extra costs incurred in the resloping and benching of cuts between stations 7765 and 7851, and between stations 8145 and 8193, performed as a part of extensive corrective work found necessary as a result of severe weather, slides, and erosion. Plaintiff has been paid for this work at the regular rate for unclassified excavation, and is here seeking the excess of its actual costs for that work over the amount paid at the regular contract rate.
The corrective work between stations 7765 and 7851 had been completed by plaintiff on May 22, 1937. Plaintiff protested on May 24, 1937, that the corrective work had been more expensive than the work originally contemplated, and requested that it be permitted to proceed on a force account basis. This would entail the keeping of separate records by the contractor as to the costs incurred in this particular work, and an independent settlement. The defendant denied this request on June 7, 1937, and plaintiff did not appeal that ruling. Claim for additional compensation for the corrective work between stations 7765 and 7851 twas renewed by plaintiff in a letter to the contracting officer dated February 2, 1938. The contracting officer made no mention of plaintiff’s failure to appeal the previous ruling, and there was further discussion of the claim followed by a conference between the parties on March 9, 1938, but its results were inconclusive. Plaintiff excepted the claim from the release in January 1939. On February 2, 1939, the contracting officer wrote to plaintiff referring to certain items upon which no agreement had been reached in the March 9,1938, conference, and stated that “no further consideration can be given to this claim until further information is received from you.”
Plaintiff took no further action on the claim until May 23, 1944, when it addressed a comprehensive claim letter to the district engineer who had succeeded the contracting officer. The district engineer forwarded plaintiff’s letter to the General Accounting Office together with his review of this claim, stating that plaintiff did incur additional expense and that had plaintiff availed itself of its rights under *816 the contract it should have been reimbursed for the extra costs of $1,731.79. The Comptroller General rejected plaintiff’s claim.
With respect to the benching and resloping of cuts between stations 8145 and 8193, plaintiff on June 21, 1937, asked for assurance that it would receive additional payment for this extra work, which had previously been ordered by the contracting officer. On July 14,1937, the contracting officer ruled that payment would be made at the contract rate, and ordered the plaintiff to proceed with the work. Thereafter plaintiff, through its subcontractors, completed the last of the corrective work between stations 8145 and 8193. The payment made to plaintiff for this work was computed at the contract rate, as the contracting officer had ruled. On August 18, 1937, in response to plaintiff’s request, the contracting officer stated:
* * * due to conditions that have arisen since July 14
* * * and in view of the fact that the actual amount of yardage involved has not yet been determined, the thirty (30) day time limit for making an appeal from my decision, will be extended to enable you to discuss the subject further with me in conjunction with other work that has been recently ordered. [Finding 33 (b) ].
On February 2, 1938, plaintiff wrote to defendant and presented the “actual cost” of the work in terms of the payments by plaintiff to the subcontractors. On February 16, 1938, the contracting officer requested detailed statements of the equipment, labor, materials and supplies used by the subcontractors. This matter also was discussed in the conference of March 9, 1938, with no agreement reached. On March 10, 1938, plaintiff wrote defendant that the requested details were not available in its own records, but that they were not material since plaintiff was requesting its own out-of pocket expenses, which were the payments to the subcontractors. No further action was taken by either party until plaintiff excepted the claim from the final release in January 1939. On February 2, 1939, defendant requested further information. Plaintiff made no further move until its comprehensive claim letter of May 23, 1944. The district engineer who reviewed that letter thought the *817 claim should be disallowed, and the Comptroller General rejected it.
WATER PIPE
The contract also provided that plaintiff was to “furnish all materials and equipment and perform all labor required to complete” certain cast-iron water-pipe lines. In order to complete this part of the contract plaintiff had to make excavation of the trenches in which to lay the pipe. Plaintiff was paid for installing the pipe at a specified unit price per lineal foot, which payment under the contract was. for “furnishing all materials and equipment and performing all labor required to lay” the pipe.
Plaintiff claimed payment in addition for the trench excavations it had made in laying the pipe, under a separate provision of the contract entitled “Foundation Excavation, General”.
Plaintiff asserted its claim for additional payment for the excavation in a letter dated June 12,1936. The contracting officer replied on July 2,1936, his letter stating:
The specifications for “Foundation Excavation, General” * * * precludes the payment for the excavation for cast iron water or drain lines under that heading.
The specifications for water lines * * * states [sic] that the contractor shall perform all labor required to complete the cast iron water pipe lines. Inasmuch as the pipe lines cannot be completed without excavating for them and backfilling them, * * * the scope of the specifications includes the performance of that work.
No further written reference to this claim was made by plaintiff until January 1939, when plaintiff excepted the item from the final release. No further action appears to have been taken by plaintiff until its comprehensive claim letter of May 23, 1944, to the district engineer. In his review of the claim which he forwarded to the General Accounting Office, the district engineer stated that the claim could not be considered since no appeal had been taken by plaintiff from the denial of the claim by the contracting officer. The Comptroller General denied the claim.
The Comptroller General’s letter rejecting plaintiff’s *818 claims for resloping and benching of cuts, and for laying of water pipe, was in part as follows:
Your claim * * * has been carefully considered and * * * no part thereof may be allowed * * *.
The administrative officer disapproved your claim due to your failure to follow the prescribed procedure provided in Arts. 3 and 4 * * * claims * * * must be asserted within 10 days * * * you waited more than five years.
Article 3, Changes, requires that claims for adjustment arising out of changes within the general scope of the contract must be asserted within 10 dáys from the date the change is ordered, unless the contracting officer shall for proper cause extend that time. Article 4, Changed Conditions, applicable where actual conditions differ materially from those shown on the contract drawings or specifications, directs that necessary changes be made in the drawings or specifications, and that increased costs be adjusted as provided in Article 3.
We believe that the claims were all properly rejected. As for the water pipe claim, there was no appeal taken from the adverse ruling of the contracting officer, And further, the evidence fails to establish that plaintiff did not include the cost of excavation in computing its bid per lineal foot of water pipe.
As for the resloping and benching of the cuts between stations 7765 and 7851, plaintiff failed to appeal from the adverse ruling of the contracting officer; upon renewal of the claim, plaintiff failed to submit the additional information requested until over five years had elapsed; and finally plaintiff failed to prove that the corrective work involved was more than reasonably should have been anticipated.
With reference to the resloping and benching of the cuts between stations 8145 and 8193, although the appeal time was extended to permit further discussion, after such further discussion had taken place plaintiff failed to submit certain requested information, and delayed more than five years before it next asserted the claim. And finally plaintiff has failed to establish that the fair and reasonable cost of that work was greater than the amount actually paid to it.
*819 The various claims are discussed in greater detail in our findings. Matters of proof of damages and of causal relationships have been rendered very difficult by plaintiff’s long delay in pressing the claims.
Therefore, as indicated, recovery can be granted for none of the claims involved, because of failure of proof, laches, and failure to proceed with appeals in the manner prescribed in the contract. United States v. Joseph Holpuch Co., 328 U. S. 234, 239, 240 [C. Cls. Nos. 43809, 43812].
Plaintiff’s petition accordingly is dismissed.
Howell, Judge; Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.