## ABBETT ELECTRIC CORPORATION
### v.
### UNITED STATES.
#### No. 591-53.

United States Court of Claims.
June 4, 1958.

John A. McWhorter, Jr., Washington, D. C., for plaintiff. John W. Gaskins, Washington, D. C., Johnson & Stanton, San Francisco, Cal., and King & King, Washington, D. C., were on the brief.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

This is a suit to recover the increased costs of performance on a Government contract. The increased costs are claimed to have resulted from delays caused by the defendant's failure to give proper notice to proceed as required by the terms of the contract. The facts upon which plaintiff predicates its suit are as follows:

In April 1950, the Bureau of Reclamation, hereinafter referred to as the Bureau, invited bids for the construction of a 230-kilovolt electrical transmission line between Rio Vista and Tracy in the Central Valley of California. The invitation to bid provided that the work was to be divided into two schedules. Schedule No. 1 covered the construction of foundations and the erection of steel towers for the transmission lines. Schedule No. 2 consisted of two parts; Part I provided for the stringing of conductors and overhead ground wires on the towers to be erected under Schedule No. 1, and Part II called for the stringing of conductors and overhead ground wires for the Sacramento and San Joaquin River crossings.

Plaintiff submitted a low bid for the work called for under Schedule No. 2, and on May 31, 1950, the plaintiff and the Bureau, acting for the United States, entered into a unit price contract for the work called for by that schedule. The contract was a standard form Government contract which required the defendant to supply the necessary conductors, ground wire, insulators and hardware needed by the plaintiff for the installation of the transmission line. The specifications which were attached to and made a part of the contract contained the following provision:

"22. *Commencement, prosecution, and completion of work.* The contractor shall begin work within twenty (20) calendar days after date of receipt of notice to proceed and shall complete all of the work within the following number of calendar days from the date of receipt of such notice: Schedule No. 1, three hundred and five (305) days; and Schedule No. 2, three hundred and sixty-five (365) days; *Provided,* That if award of contract for the work under Schedule No. 2 is made to a contractor other than the contractor awarded the contract for work under Schedule No. 1, notice to proceed for the work under Schedule No. 2 will be issued at the discretion of the contracting officer any time within two hundred and forty (240) calendar days for the work under Part I, and two hundred and seventy-five (275) calendar days, for the work under Part II, after date of award of the contract, and the contractor under Schedule No. 2 shall complete all work under Part I within one hundred and twenty-five (125) calendar days and all work under Part II within ninety (90) calendar days, from the date of receipt by him of such notice. * * *"

Immediately after the consummation of the contract, levees protecting one of the islands in the San Joaquin River broke which caused flooding of a portion of the land over which the transmission line was to be strung. The Bureau upon learning that the levees, which were privately owned and maintained, were not to be rebuilt decided to reroute a portion of the line covered by plaintiff's contract. It also redesigned the transmission towers increasing the height of their foundations, and new rights-of-way had to be negotiated over the rerouted area.

Plaintiff heard of the flooding and wrote the Bureau on July 26, 1950, asking for the approximate location of the rerouted lines and whether the river crossings were to remain as planned. This letter also requested some idea as to the starting and completion time on the contract. In response the Bureau, on July 28, 1950, sent plaintiff a drawing showing the new routing of the line and advised it that the river crossings were about the same as previously specified. The Bureau then stated:

"It is estimated, by this office, that the tower erection for the Rio Vista-Tracy Section of the line will be well enough advanced to enable you to begin stringing operations about October 1. It is estimated that the river crossing towers should be available for stringing approximately December 15. We will endeavor to inform you well in advance of the issuance of Notice to Proceed so that you may make your plans accordingly."

The Bureau, however, did not give the changes to the contractor for the river crossing towers until September 13, 1950, and the line towers contractor did not receive its changes until December 21, 1950. On November 24, 1950, the Bureau notified plaintiff that the proposed dates for issuance of the notices to proceed contained in its letter of July 28, 1950, had to be advanced to March 1, 1951, for the line route and to February 15, 1951, for the river crossings.

On December 22, 1950, the Bureau wrote plaintiff stating that under the contract the Bureau was required to issue a notice to proceed on Part I (line route) within 240 calendar days

after the award of the contract and that this time expired on January 26, 1951. The Bureau desired to withhold issuance of the notice until work under Scheudule No. 1 (construction of the towers) had further progressed. Plaintiff replied agreeing to a postponement upon the condition that the Bureau "reimburse us for any additional costs that we might incur due to increased wages and working conditions demanded and awarded to the Local Unions having jurisdiction". Thereafter on January 25, 1951, plaintiff received a notice to proceed with its work under Part I. This letter read, in material part, as follows:

"Pursuant to the provisions of paragraph 22 of the specifications, you are hereby notified to proceed with the work covered by this contract. The date you receive this letter, as shown on the registry return receipt, will be the effective date in computing the time within which completion of the contract is required.

"Inasmuch as the work covered by Schedule 1 of subject specifications is not sufficiently advanced for you to begin your stringing operations, it will be necessary for us to grant an extension of time for the completion of your contract. This delay will be made the subject of a Findings of Fact which will be issued at a later date."

On March 1, 1951, plaintiff was sent a similar letter regarding the work to be performed under Part II of its contract. The effect of these letters was to give literal notice to proceed as required under the specifications to the contract while at the same time suspending the work which the defendant had a right to do under paragraph 14 of the specifications, page 7.

On August 21, 1951, plaintiff was notified that on September 1, 1951, it could begin work on Part I and that an extension of time for performance would be granted from the date on which notice to proceed was issued until such time as it was possible for plaintiff to proceed. Such an extension on Part I was in fact granted from January 27 to August 31, 1951. A similar letter was received by plaintiff with respect to Part II directing work to begin on the river crossings October 22, 1951. Plaintiff was also granted an extension of time for the period from March 3 to October 21, 1951.

As a result of these delays plaintiff was required to carry on its work in unseasonable weather which slowed and inhibited its performance. Realizing that such was the case the defendant further extended the time for performance to the dates upon which each part of the work was formally accepted, i. e., April 25, 1952, for Part I and March 31, 1952, for Part II.

By letter dated May 23, 1952, plaintiff submitted to the contracting officer a claim for additional compensation in the amount of $53,335.13 for added costs due to the delay in issuing notices to proceed. The claim was denied by the contracting officer and this denial was approved by the Solicitor of the Department of Interior acting under authority of the Secretary. The denials of relief were based on the ground that the claim was one for unliquidated damages which were not reimbursable under the contract.[1] Thereafter a suit for damages was brought in this court on the ground that the defendant breached the contract by failing to give actual notices to proceed within the time required by paragraph 22 of the specifications to the contract. It is alleged that none of the additional costs would have occurred but for such failure on the part of the defendant. A Commissioner of this court charged with the duty to take evidence and make findings of fact has reported

1. Except for an item in the amount of $714.54 claimed by plaintiff as extra costs incurred in the maintenance and repair of an access road which was held to be plaintiff's responsibility. Plaintiff submitted no substantial evidence that the finding of the contracting officer was erroneous or to support this item of the claim against the defendant.

that: (1) The defendant's delay in issuing effective notices to proceed resulted in performance of the work in a period when plaintiff was obliged to pay increased rates of wages for labor; (2) This delay also caused plaintiff to perform the work in the winter rainy season with resultant loss of efficiency of labor and equipment.

The elements and computations making up the increased costs caused by the delays are set forth in detail in findings 23 through 37. The total increased costs reasonably attributable to the delays on the part of the defendant are found by the Commissioner to be $13,474.26. Both parties have taken exception to this figure, but we feel that it fairly represents the actual loss suffered by the plaintiff. Therefore, the sole question to be decided by this court is whether or not the plaintiff may recover this amount from the defendant. We think it is so entitled for the following reasons.

The contract specifications called for the defendant to give plaintiff notice to proceed within a specified period of time. It is clear from the recited facts that this provision was not complied with. True the defendant purported to give notice to proceed and then in the same letter invoked the section which allowed it to suspend operations. A notice to proceed is an order by the Government to the contractor to get its equipment and men on the job and begin performing the work called for under the contract, Peter Kiewit Sons' Co. v. United States, Ct.Cl., 151 F.Supp. 726. Clearly this was not the effect of the letters of January 25 and March 1, 1951, to the plaintiff. Those letters were apparently an attempt on the part of the defendant to circumvent the contract requirement that it issue notices to proceed within a certain time and should not be given the standing of notices to proceed. It seems to us that this was a breach of the plain and unambiguous terms of the contract.

Defendant says that this case presents a situation closely analogous to United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44. In that case the contractor was delayed 157 days in the performance of its contract by reason of the failure of the Government to make the job site available. Plaintiff there had contracted to install a lighting system at Washington's National Airport. Its obligation, in the nature of a "follow-up contract," was to be discharged when and as Government engineers made runways available to plaintiff. The Supreme Court in reversing this court's judgment for the plaintiff held that since the contract in question neither expressly nor impliedly warranted that the site would be made available within a certain time, no liability for damages due to delays could attach to the Government, citing H. E. Crook Co. v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438, and United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53.

We feel that a careful reading of the Foley decision, however, rather than weakening, fully supports plaintiff's claim for recovery in this case. Initially the Supreme Court therein stated that the issue before it was not one involving a breach by the Government of an express covenant found in the contract. Thus, in the words of the Court 329 U.S. at page 66, 67 S.Ct. at page 155: "In no single word, clause, or sentence in the contract does the Government expressly covenant to make the runways available to respondent at any particular time * * *." The inference to be drawn from this language seems obvious. Moreover, the Court extended its argument by stating that Government liability might be implied from the terms of the contract. As the Court reasoned, if by implication the contract had included an unqualified warranty to make the runways promptly available which was breached by defendant, plaintiff's claim for damages would have been allowed. However, a close examination of relevant provisions of the Foley contract satisfied the Court that such an implied warranty did not exist. As a consequence, the contractor there was held entitled only to

the relief provided for in the contract for Government-induced delay; *viz.*, a time extension.

We think the Supreme Court's preliminary statement concerning an "express covenant," and the inference which accompanies it, is sound in law and applicable to the facts before us.[2]

Here the express covenant is found in paragraph 22 of the contract specifications. That paragraph reads:

"* * * [N]otice to proceed for the work under Schedule No. 2 *will be issued* at the discretion of the contracting officer any time *within* two hundred and forty (240) calendar days for the work under Part I, and two hundred and seventy-five (275) calendar days, for the work under Part II, after date of award of the contract * * *." [Emphasis supplied.]

As mentioned above, this provision of the contract was not complied with by

2. The manner in which we have interpreted that decision is revealed in the case of Cauldwell-Wingate Co. v. United States, 109 Ct.Cl. 193, involving a claim based on the Government's alleged delay in making a work site available to plaintiff. At page 221 this court said:

the Government. The delay thereby growing out of the breach caused plaintiff to sustain added expenses in the completion of its contract (finding 22). Furthermore, the fact that the Government might not have been negligent in meeting its obligations under the contract is beside the point where delays attributable to it constituted a breach of contract. See Kehm Corp. v. United States, 93 F. Supp. 620, 119 Ct.Cl. 454.

It necessarily follows that plaintiff is entitled to recover its actual damages caused by defendant's failure to give notices to proceed as provided by the contract. Judgment will therefore be entered for the plaintiff in the amount of $13,474.26.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

"But, even though there may have been some delay in the delivery of the buildings, plaintiff would not be entitled to recover under the decision of the Supreme Court in United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44. *The defendant did not agree to deliver the buildings on any specific dates."* Emphasis supplied.]