Earl W. **HAGERMAN**, d/b/a Hagerman Construction, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. No. 4269.

United States District Court
D. Wyoming.
Jan. 22, 1960.

A. G. McClintock, Cheyenne, Wyo., and S. W. Davis, Greybull, Wyo., for plaintiff.

John F. Raper, Jr., U. S. Atty., Cheyenne, Wyo., for defendant.

KERR, District Judge.

Earl W. Hagerman, doing business as Hagerman Construction, brings this suit against the United States of America under the Tucker Act, 28 U.S.C.A. § 1346 (a) (2), for damages arising from an alleged breach of contract by the defendant. The defendant has filed an answer and subsequent thereto filed a motion for summary judgment, urging that the case falls clearly within the rule announced by the Supreme Court of the United States in United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44; H. E. Crook Company v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L. Ed. 438; United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53. The matter is before the Court on the motion for summary judgment.

The basic facts can be stated and the relevant history told from the pleadings, the contract, affidavits, correspondence, opinion of the Board of Contract Appeals, all of which are uncontradicted so far as the record of the case is concerned.

The complaint alleges in substance as grounds for recovery that notwithstanding the agreement of the defendant to furnish metal pipe and accessories necessary for the completion of the work undertaken by the plaintiff, and in violation of the terms of the agreement, defendant failed and neglected to furnish such materials within the time reasonably necessary for the proper completion of the work and furnished defective materials, by reason of which plaintiff was unreasonably and improperly delayed in the prosecution of the construction work, all to his damage in the sum of $7,214.36.

The cause of the delay encountered in the completion of the contract becomes of vital importance. Northwestern Engineering Co. v. United States, 8 Cir., 154 F.2d 793.

On December 30, 1957, plaintiff entered into a written contract with defendant, acting through W. B. Wallace, Area Administrator of the Bureau of Land Management, Department of the Interior, for the construction by plaintiff of a 21,000 cubic yard detention type dam in Washakie County, Wyoming. This contract constitutes the subject of this controversy.

On March 17, 1958, the defendant awarded an independent contract to the Eaton Metals Products Company (hereinafter referred to as "Eaton") to supply corrugated metal pipe and accessories to be used in the construction of said retention dam and to be delivered within 45 days from the date of the receipt of the order for a price of $3,306.26. The order was received by Eaton March 24, 1958. The contract with Eaton required that the corrugated pipe should be water tight for low heads, which, according to accepted industry practice, would be any head up to 20 feet. On April 10, 1958, defendant called Eaton and explained the urgent need for the materials to be furnished by it and requested an earlier delivery date than that called for under their contract. Eaton advised the defendant that it thought the delivery would probably be made the last week in April 1958 and also stated it would call

by telephone on April 14 or 15 to indicate the exact date. No call was received from Eaton. On May 1, 1958, Eaton wrote defendant as follows:

"This is to advise that we have begun fabrication April 30, 1958, a. m. on this material with the exception of the 30″ pipe and elbows. This material covering this 30″ pipe will not arrive in Billings until May 5, 1958, from our supplier. The rest of the material will be delivered to you on approximately the week of May 5, 1958, or right around May 7, 1958. The balance of the material we hope to have to you by May 13, 1958."

On the basis of the aforesaid letter and on May 7, 1958, defendant gave notice to Hagerman to proceed with the work under the contract. The contract completion time was 35 days, thus setting the completion date for June 11, 1958. It will be observed that the notice to proceed was issued in anticipation by the defendant that the materials to be furnished by Eaton would be available for use by the plaintiff in the normal course of construction work and under the belief that the materials would be delivered on or before May 13, 1958. On May 13, 1958, the contractor was on schedule. Eaton made deliveries under its contract to defendant on May 12, 22, 27, 28 and June 4, 1958.

Final delivery of materials to be furnished by the defendant was not made until June 4, 1958, at which time the materials were installed by the plaintiff and tested in accordance with Paragraph 9, "Specifications", of the contract. During the test made by the plaintiff latent defects in the materials furnished by Eaton were brought to light and determined to be such that the necessary repair could not be completed on the job. On June 6, 1958, plaintiff was ordered to remove the materials and on June 9 and 10, 1958, they were picked up by Eaton for repairs. The pipe was removed at Eaton's expense. The pipe was repaired by Eaton and returned for installation on June 23, 1958. The second installation was delayed by further disclosure of defects in the re-test of the pipe, necessitating a further shut down of operations while repairs were being made. On July 9, 1958, the defendant accepted the pipe as satisfactory, at which time construction work was resumed. As a result of the delays caused by Eaton the defendant extended the completion date of the contract as authorized in the "Delays" clause to August 8, 1958, and the work was completed on said date.

The record discloses the defendant made telephone calls and sent wires to Eaton on April 10, May 14, 19, 22, 23, 28, 29, June 6, 18, July 3 and 5, urging them to expedite the delivery of the materials.

The above recitation of facts contained in this memorandum are taken from the affidavits of the agents of the defendant and stand without challenge or controversy.

An examination of the contract fails to disclose the defendant promised to deliver the pipe at any specified time. Obviously if the defendant did not deliver the pipe within the completion date of the contract Hagerman had a right to ask for an extension of such completion date. This was done.

Finally, there is no evidence or document in the record, including the complaint, which tends to show the government was in any way at fault in failing to exert its best efforts to obtain the pipe it had agreed to furnish. On the contrary, I find it exercised great diligence in an effort to secure the pipe and its inability to do so was not attributable to any fault or neglect on the part of the government. It is equally clear the delay was caused by Eaton furnishing defective materials.

Paragraph 6 of the Additional General Provisions of the contract specifically provides: "The Contracting Officer's Authorized Representative may give written notice to the Contractor ordering stoppage of the work because of * * * *faulty equipment*, * * *. * * * If such work interruption is beyond the

control of and not due to the fault or negligence of the contractor, he shall not be charged for the delay". (Emphasis supplied.)

■ I am unable to distinguish the case at bar from United States v. Howard P. Foley Co., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44. There, as here, the court was dealing with a standard form government contract. There, as here, the contract provided a procedure to govern both parties in case of delay in the completion, whether such delay was caused by Hagerman, the government or other causes. The court said at pages 66 and 67 of 329 U.S., at page 155 of 67 S.Ct.:

"In no single word, clause, or sentence in the contract does the Government expressly covenant to make the runways available to respondent at any particular time. Cf. United States v. Blair, 321 U.S. 730, 733–734, 64 S.Ct. 820, 822, 88 L.Ed. 1039. It is suggested that the obligation of respondent to complete the job in 120 days can be inverted into a promise by the Government not to cause performance to be delayed beyond that time by its negligence. But even if this provision standing alone could be stretched to mean that the Government obligated itself to exercise the highest degree of diligence and the utmost good faith in efforts to make the runways promptly available, the facts of this case would show no breach of such an undertaking. For the Court of Claims found that the Government's representatives did this work 'with great, if not unusual, diligence,' and that 'no fault is or can be attributed to them.' Consequently, the Government cannot be held liable unless the contract can be interpreted to imply an unqualified warranty to make the runways promptly available.

" * * * Article 9 of the contract, entitled 'Delays-Damages,' set out a procedure to govern both parties in case of respondent's delay in completion, whether such delay was caused by respondent, the Government, or other causes."

And again at pages 68 and 69 of 329 U.S., at page 155 of 67 S.Ct.:

"In the Crook and Rice cases we held that the Government could not be held liable for delay in making its work available to contractors unless the terms of the contract imposed such liability. Those contracts, practically identical with the one here, were held to impose none. * * * The question on which all these cases turn is, did the Government obligate itself to pay damages to a contractor solely because of the delay in making the work available? We hold again that it did not for the reasons elaborated in the Crook and Rice decisions."

Two other Supreme Court cases are cited in the Foley case, H. E. Crook Company v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438, and United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53. In the Crook Company case Mr. Justice Holmes speaking for the court stated at page 7 of 270 U.S., at page 184 of 46 S.Ct.:

"Nothing more is allowed for changes, as to which the Government is master. *It would be strange if it were bound for more in respect of matters presumably beyond its control.* The contract price, it is said in another clause shall cover all expenses of every nature connected with the work to be done. Liability was excluded expressly for utilities that the Government promised to supply. We are of opinion that the failure to exclude the present claim was due to the fact that the whole frame of the contract was understood to shut it out, although in some cases the Government's lawyers have been more careful. Wood v. United States, 258 U.S. 120, 42 S.Ct. 209, 66 L.Ed. 495. The plaintiff's *time was extended and it was paid the full contract price. In our opinion it is entitled to nothing more."* (Emphasis supplied.)

In the Rice case the court stated at pages 65 and 66 of 317 U.S., at page 123 of 63 S.Ct.:

"We agree with this view. *We do not think the terms of the contract bound the government to have the contemplated structure ready for respondent at a fixed time.* Provisions of the contract showed that the dates were tentative and subject to modification by the government. The contractor was absolved from payment of prescribed liquidated damages for delay, if it resulted from a number of causes, including 'acts of Government' and 'unusually severe weather'. * * *

"As pointed out, the delay here resulted from a change in specifications made necessary by discovery of soil unsuitable for foundation purposes. The government having reserved the right to make such changes upon discovery of 'subsurface and (or) *latent conditions at the site materially differing from those shown on the drawings* or indicated in the specifications', delays incident to the permitted changes cannot amount to a breach of contract. If there are rights to recover damages where the government exercises its reserved power to delay, they must be found in the particular provisions *fixing the rights of the parties.*" (Emphasis supplied.)

And again at page 69 of 317 U.S., at page 124 of 63 S.Ct.:

"The other was the delay itself and for this the time necessary to perform the contract was *equitably adjusted by extension,* thereby relieving respondent of liquidated damages which could otherwise have been imposed. Under the terms of the contract, it is entitled to no more." (Emphasis supplied.)

Another case in point is Northwestern Engineering Co. v. United States, 8 Cir., 154 F.2d 793. In construing a standard government contract the court said at page 797:

"As the delays were not attributable to the fault or misconduct of the Government, the plaintiff cannot recover."

And again at page 798 the court has found:

"The court has found that the delay was not attributable to the fault or misconduct of the defendant. It, therefore, follows that the plaintiff can not recover for damages by reason of such delay."

In the case at bar the record is replete with diligence and cooperation on the part of the government. Telephone calls were made almost daily to Eaton urging it to deliver the pipe.

■ I am not unmindful that a court should proceed with great caution in approaching a motion for summary judgment. Fed.Rules Civ.Proc. rule 56, 28 U.S.C.A., does not seek to deprive litigants of their right to trial, but seeks to determine what, if any, issues of fact are present for a court to try and to enable it to expeditiously dispose of the case by giving judgment on the law where material facts are not in dispute. The purpose of the rule is well stated by Judge Bratton in S M S Manufacturing Company v. United States-Mengel Plywoods, 10 Cir., 219 F.2d 606. At page 608 he appropriately stated:

"If it affirmatively appears however from the pleadings, the admissions, the depositions, and the affidavits, if any, that there is no genuine issue as to any material fact upon which the outcome of the litigation depends, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment. (Citing cases.)"

A study of this entire record persuades me to the belief that there is no dispute as to any genuine issue of fact. The case is therefore ripe for summary judgment and I so hold. The defendant will prepare an appropriate judgment sustaining the motion and submit the same within 10 days from this date and the clerk will enter an order accordingly.