Sidney KENT, doing business as Dorald Engineering Company, Plaintiff,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.

May 8, 1964.

I. Ben Greenman, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for the United States; Philip H. Schaeffer, Asst. U. S. Atty., of counsel.

WYATT, District Judge.

This is a motion for summary judgment by plaintiff. Fed.R.Civ.P. 56(a).

■ The government as defendant has asked in an opposing affidavit for summary judgment in its favor and, if otherwise entitled to such judgment, the government may be granted that relief without formal written cross-motion, either (a) on the ground that an oral cross-motion was in effect made at the hearing of the motion or (b) on the ground that no cross-motion is necessary. The proposition last stated is fully supported in 6 Moore's Federal Practice (2d ed.) 2088–89, where a number of District Court decisions are cited. In Bell v. Waterfront Commission of New York Harbor, 183 F.Supp. 175, 178–179 (S.D. N.Y.1960), Judge Dimock granted a summary judgment to defendant without any cross-motion therefor, declaring: "While defendant has not cross-moved for summary judgment, such a formal motion is not necessary where no issue of fact is in dispute". This decision was affirmed by our Court of Appeals (279 F.2d 853; 1960) and the practice seems thus inferentially to have been approved. Judge Dimock followed the same practice in a later case. Banco Nacional de Cuba v. Sabbatino, et al., 193 F.Supp. 375, 386 (S.D.N.Y.1961), affirmed 307 F.2d 845 (1962), reversed on other grounds, 372 U.S. 905, 83 S.Ct. 717, 9 L.Ed.2d 715, 1964.

The action is for $7,803.40 and is by a government contractor for the construction of an approach lighting system and other work at John F. Kennedy International Airport, formerly New York International Airport. The gist of the claim is that the government delayed the completion of the contract, that this delay increased the cost to plaintiff of its performance under the contract, that the delay by the government was a breach of the contract, and that plaintiff is entitled to his increased costs as damages for breach of contract.

The jurisdiction of this Court is based on 28 U.S.C. § 1346(a) (2) which derives from the Tucker Act of March 3, 1887, c. 359, 24 Stat. 505, 506. It may be noted that the Tucker Act "for the first time, gave District Courts general authority to hear and determine claims against the Government". Bates Mfg. Co. v. United States, 303 U.S. 567, 571, 58 S.Ct. 694, 696, 82 L.Ed. 1020 (1938). The purpose was to make it possible for claims against the government for relatively small amounts (less than $10,000) to be prosecuted at the places of residence of the claimants rather than in Washington at the Court of Claims.

Plaintiff bid on the contract on a government bid form which among other things made it clear

(a) that work was to be started within 5 days from the effective date of a Notice to Proceed; and

(b) that work was required to be completed in 75 days from such Notice to Proceed.

The bid form also contained the statement: "Notice to Proceed will be approximately: November 2, 1959".

The contract was dated September 29, 1959; the date of execution is not stated. The work was primarily the construction of an approach light system and a flasher system for Runway 22L and the dismantling of these two systems on Runways 22R and 4L. A substantial part of the material to be used in the construction on Runway 22L was to come from the dismantling of the systems on Runways 22R and 4L.

The invitation for bids contained this statement: "Estimated Effective date of Notice to Proceed: November 2, 1959."

The invitation for bids also made clear that the work of dismantling would have to be done in three successive phases, described as follows:

"In order to provide by-directional approach lighting the contractor will be required to carry on work of dismantling in accordance with the following schedule:

"*Phase 1* (beginning with the start of construction). The contractor shall be free to dismantle both Systems on Runway 4L.

"*Phase 2.* (beginning 30 days after the start of construction). The Contractor shall be free to dismantle all components of the flasher system on Runway 22R.

"*Phase 3* (beginning with the commissioning of the approach lighting system and the flashers on Runway 22L) The Contractor shall be free to dismantle all components of the Approach Light System on Runway 22R."

It was also stated that each phase of the work had to be inspected and approved before any work could be done on the next phase.

A "partial" notice to proceed, effective November 9, 1959, was given. The notice was "partial" because it authorized only the commencement of construction of the approach lighting system and flasher system on stations 1 through 10 of Runway 22L.

A notice to proceed—that is, a notice covering all the contract work—was given effective February 8, 1960.

The work was completed on July 5, 1960.

Both plaintiff and the government calculated the days of delay on the assumption that the contract performance time of 75 days began to run on November 9, 1959, the effective date of the "partial" notice to proceed. On this basis, the work should have been completed by February 27, 1960. The date of actual completion—July 5, 1960—was 129 days later.

The government then took the position that under the stipulated provision in the contract for $50 per day liquidated damages in favor of the government, $6,450 was due the government (129 × $50) and this amount was withheld from plaintiff.

Under date of October 25, 1960 plaintiff asked for an extension of time to cover delays from causes beyond his con-

trol. Such an extension is provided for in Article 5(c) of the "General Provisions" of the contract.

The contract contained a "disputes" clause ("General Provisions", Article 6) under which any "dispute concerning a question of fact" must be decided by the Contracting Officer, from whose decision an appeal can be taken to the "head of the department" but the decision on appeal is to be final "unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious or so grossly erroneous as necessarily to imply bad faith". (41 U.S.C. § 321)

Apparently plaintiff treated the increased cost to him because of delay as "a question of fact" and submitted this claim to the Contracting Officer.

Under date of November 15, 1960 plaintiff asked for an increase in pay of $7,803.40 under Article 3 ("changes") of the "General Provisions" of the contract. This article gives the government the right to make changes "in the drawings and/or specifications of this contract" but provides that if "such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made * * *". According also to Article 5, a dispute over the "adjustment" to be made is a "dispute concerning a question of fact" and the decision of the "head of the department" is final.

Plaintiff based his claim for an equitable adjustment" put forward in the November 15, 1960 letter on the delay caused by the following acts or omissions by the government (quoted from the March 1, 1961 "findings of fact" of the Contracting Officer):

"1. Delay caused by the Government in the issuance of Change Order No. 2, which modified the location of the access road.

"2. Late delivery of the Government Furnished Base Plates for the towers.

"3. Restrictions by the Government on the Dismantling of Approach Lighting Systems causing a three month delay.

"4. Restrictions by the Government on the Dismantling of the Flashers which resulted in the issuance of Change Order No. 5 and further delayed the work, pending the arrival of Government Furnished Materials.

"5. Delay by the Government in obtaining permit from New York City to place 8″ conduit under Rockaway Boulevard, from January 22, 1960 to April 1, 1960.

"6. Restrictions by the Government on the installation of fencing at stations 12 through 30, until paving of access road was completed by the New York Port Authority.

"7. Delay in the dismantling of old light lane pending the Government's receipt of approval from the New York Port Authority as to disposition of the Regular Pad and Perimeter Fencing."

The Contracting Officer granted the October 25, 1960 request of plaintiff for an extension of time, recognizing that the delay was caused by the government. The government's claim to liquidated damages was therefore eliminated and the withheld $6,450 was remitted to plaintiff.

As to the November 15, 1960 claim for an "equitable adjustment", the Contracting Officer first noted that such an adjustment had already been made in respect of Change Orders 2 and 5 (items 1 and 4 above). Presumably this meant that plaintiff was paid for additional work and materials required by those Change Orders. The Contracting Officer then denied all claims for damages caused by delays of the government on the ground that the contract specifically precluded such claims.

Plaintiff then appealed to the "head of the department", namely, the Administrator of the Federal Aviation Agency. The ground for the appeal was that the claim was not for "damages sustained" but was for increase in costs by reason

of a "change in the contract which modified the contract from a 75 day job, upon which our costs were determined, to one of 204 days plus time allowed for Change Orders". In other words, plaintiff was basing his claim on Article 3 of the "General Provisions" of the contract.

Under date of July 5, 1961 the decision of the Contracting Officer was sustained by the Administrator on the same reasoning as that of the Contracting Officer, namely, that the contract specifically provided that "the government will not be liable for the type of delays involved herein".

This action was then commenced.

It must be clear from what has been related that the claim in this action is entirely different from that submitted to the Contracting Officer and to the Administrator. From them plaintiff sought an "equitable adjustment" under Article 3 of the "General Provisions" of the contract. Here in this action plaintiff seeks damages for alleged breach of contract by the government, described in the complaint as a "failure" by the government "to act * * * within a reasonable time" and as "fault and unreasonable conduct" and described in the memoranda for plaintiff as a breach of warranty by the government to make available the work areas so that plaintiff could complete the contract within 75 days of November 8, 1959.

In any event the parties are agreed that, under Kayfield Construction Corp. v. United States, 278 F.2d 217 (2d Cir. 1960), the question to be here decided is one of law and that this question of law is to be determined by the Court without regard to the administrative decisions. See 41 U.S.C. § 322; but see Salem Products Corp. v. United States, 298 F.2d 808, 810 (2d Cir. 1962).

Under applicable decisions of the Supreme Court, plaintiff has no cause of action. United States v. Howard P. Foley Co., Inc., 329 U.S. 64, 67 S.Ct. 154, 91 L.Ed. 44 (1946); United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53 (1942); H. E. Crook Co. v. United States, 270 U.S. 4, 46 S.Ct. 184, 70 L.Ed. 438 (1926).

There is no warranty in the contract that the government will do anything at any particular time, either by making areas available or otherwise. Indeed, the contract permits the government to make changes ("General Provisions", Article 3) and "to suspend the work wholly or in part" ("Additional General Provisions", Article 39(d)). In the case of changes, the only remedy of the contractor is the "equitable adjustment" in agreement with the government. In the case of a stoppage of the work by the government, it is expressly provided that the government "shall not assume any liability for damages or loss of anticipated profits from such stoppage of work".

There is no promise by the government to give the Notice to Proceed by any particular time. Had the government waited until July 5, 1960 (when the work was in fact completed) before giving the Notice to Proceed, there would have been no breach of contract. As was said in Crook Co. v. United States, above, 270 U.S. at 6–7, 46 S.Ct. at 184:

"But the only reference to delays on the Government side is in the agreement that if caused by its acts they will be regarded as unavoidable, which though probably inserted primarily for the contractor's benefit as a ground for extension of time, is not without a bearing on what the contract bound the Government to do. Delays by the building contractors were unavoidable from the point of view of both parties to the contract in suit. The plaintiff agreed to accept in full satisfaction for all work done under the contract the contract price, reduced by damages deducted for his delays and increased or reduced by the price of changes, as fixed by the Chief of the Bureau of Yards and Works. Nothing more is allowed for changes, as to which the Government is master. It would be strange if it were bound for more in respect of

matters presumably beyond its control."

When a claim for delay was next pressed in the Supreme Court, it was again denied and the Court declared (United States v. Rice, above, 317 U.S. at 67–69, 63 S.Ct. at 124):

> "It seems wholly reasonable that 'an increase or decrease in the amount due' should be met with an alteration of price, and that 'an increase or decrease * * * in the time required' should be met with alteration of the time allowed; for 'increase or decrease of cost' plainly applies to the changes in cost due to the structural changes required by the altered specification and not to consequential damages which might flow from delay taken care of in the 'difference in time' provision. The provision as to time serves the large purpose of removing from persons in the position of respondent liability for 'delay' beyond the stipulated date for which they might otherwise have their contract terminated or might be required to pay liquidated damages without fault.
>
>    *    *    *    *    *
>
> "In this case there were two consequences of the discovery that the Home could not be built as originally planned. One was an alteration of specifications, which resulted in a slight cut in respondent's outlay and in its compensation. The other was the delay itself, and for this the time necessary to perform the contract was equitably adjusted by extension, thereby relieving respondent of liquidated damages which could otherwise have been imposed. Under the terms of the contract, it is entitled to no more."

Finally in a case apparently very close on its facts to that at bar, the Supreme Court declared (United States v. Howard P. Foley Co., Inc., above, 329 U.S. at 66–69, 67 S.Ct. at 155):

> "Consequently, the Government cannot be held liable unless the contract can be interpreted to imply an unqualified warranty to make the runways promptly available.
>
> "We can find no such warranty if we are to be consistent with our Crook and Rice decisions, supra. The pertinent provisions in the instant contract are, in every respect here material, substantially the same as those which were held in the former cases to impose no obligation on the Government to pay damages for delay. Here, as in the former cases, there are several contract provisions which showed that the parties not only anticipated that the Government might not finish its work as originally planned, but also provided in advance to protect the contractor from the consequences of such governmental delay, should it occur. The contract reserved a governmental right to make changes in the work which might cause interruption and delay, required respondent to coordinate his work with the other work being done on the site, and clearly contemplated that he would take up his work on the runway sections as they were intermittently completed and paved. Article 9 of the contract entitled 'Delays-Damages,' set out a procedure to govern both parties in case of respondent's delay in completion, whether such delay was caused by respondent, the Government, or other causes. If delay were caused by respondent, the Government could terminate the contract, take over the work, and hold respondent and its sureties liable. Or, in the alternative, the Government could collect liquidated damages. If, on the other hand, delay were due to 'acts of the Government' or other specified events, including 'unforeseeable causes,' procedure was outlined for extending the time in which respondent was required to complete its contract, and relieving him from the penalties of contract termination or liquidated damages.

\* \* \* \* \* \*

"This contract, like the others, shows that changes and delays were anticipated and provided for. The question on which all these cases turn is, Did the Government obligate itself to pay damages to a contractor solely because of delay in making the work available? We hold again that it did not for the reasons elaborated in the Crook and Rice decisions."

There is nothing in the contract at bar which can remove this claim from the impact of the quoted decisions.

The Court of Claims has not regarded the cited Supreme Court decisions as denying the possibility of recovery to a government contractor where the government was "at fault" in causing the delay. Chalender v. United States, 119 F.Supp. 186, 190, 127 Ct.Cl. 557 (Ct.Cl. 1954). The Court of Claims has said that there may be a recovery for damages caused by the government's delay where the government has been "guilty of some act of negligence or willful misconduct which delays the contractor's performance". This is said to follow because "there is in every Government contract, as in all contracts, an implied obligation on the part of the Government not to willfully or negligently interfere with the contractor in the performance of his contract \* \* \*". Peter Kiewit Sons' Co. v. United States, 151 F.Supp. 726, 731, 138 Ct.Cl. 668 (Ct.Cl.1957).

It may well be doubted that these expressions of the Court of Claims are valid, in the face of the language and reasoning of the cited Supreme Court decisions.

But, assuming the law to be as the Court of Claims declares, the plaintiff here has not made out any cause of action. There is nothing pleaded or proved which shows "negligence or willful misconduct" on the part of the government.

As far as pleading is concerned, the plaintiff would not be denied relief because his complaint alleges "fault and unreasonable conduct" rather than "negligence or willful misconduct".

 The obstacle to any relief to plaintiff—assuming the views of the Court of Claims to be valid—is that there is no showing of fact that the government was really as fault. For all that appears from the seven causes of delay specified by plaintiff in his November 15, 1960 "claim letter", the government acted reasonably and properly even if a delay was the result.

This Court may be sympathetic with the frustrated expectations of plaintiff but may not on that account impose upon the parties an agreement to which they did not assent. The Court must enforce the contract as the parties themselves made it.

The motion of plaintiff for summary judgment is therefore denied.

There being no issue as to any material fact, the Clerk is directed to enter judgment in favor of the defendant dismissing the action.

So ordered.